[Baer & Co. v. Mobile Cooperage & Box Mfg. Co.]

# Baer & Co. *v.* Mobile Cooperage & Box Mfg. Co.

## *Action for Breach of Contract.*

(Decided Feb. 4, 1909. Rehearing denied April 6, 1909.
49 . South. 92.)

1. *Sales; Contracts; Consideration.*—Where, in the subleasing of premises an obligation to sell goods was incorporated, which obligation was binding only on the sellers, and the contract to sell was an inducement to the buyers to lease the premises, the obligation to pay rent under the sublease was a valuable consideration, not only for the use of the premises, but for the obligation of the seller to supply the goods.

2. *Same; Implied Warranty; Sale by Description; Caviat Emptor.* —Where goods are sold by description and not by the buyers selection, and without any opportunity of inspection before buying there is ordinarily an implied warranty that they conform to the description in terms, but also that they are not so inferior as to be unsalable among dealers in such goods; and the doctrine of caviat emptor does not apply to such a sale, especially where the seller is the manufacturer or the sale is executory for future delivery.

3. *Same; Breach of Warranty; Remedy of Buyer.*—The buyer may rescind by refusing the goods, may accept the goods and sue for the breach, or may recoup by counter claim for damages for the breach if the seller elects to sue for the price, where there has been a breach of warranty in the sale.

4. *Same; Waiver; Fraud.*—Since the warranty survives the acceptance, the mere acceptance and use of goods by a buyer, even after a knowledge of defect would not prevent the buyer's action upon a warranty or for fraud.

5. *Same; Contract; Construction; Warranty.*—Where a seller and manufacturer agreed to deliver as much shipping cull and mill cull lumber as the buyer should desire to a certain limit, at prices fixed for each, knowing when the contract was made the use to which the buyer desired to put the goods, such seller complied with its contract if it delivered either shipping or mill cull which were merchantable and could be used for the purpose for which they were ordered, and this without any regard to any custom as to size or quality; but the agreement contained an implied warranty that when the seller delivered shipping culls, as shipping culls, it would not substitute mill cull and collect the higher price for shipping culls.

6. *Same; Contract; Silence as to Time of Payment.*—The presumption is that the sale is for cash when the contract of sale is silent as to the time for payment, but this presumption is not conclusive and if the parties treat the contract otherwise, they are governed by the mutual construction given it.

7. *Same; Breach; Remedy of Buyer; Default of Seller.*—A breach of contract of sale by the buyer for failing to pay for an invoice during a certain year would not excuse a default of the seller for the previous year.

8. *Same; Burden of Proof.*—Where, under a contract to deliver lumber, two kinds of lumber were called for at different prices, in an action for a breach of such contract, if the buyer showed that the seller had commingled the different grades for a fraudulent purpose of collecting the price of the more expensive grade for the cheaper lumber, the burden was upon the seller to show the amount of the higher priced lumber delivered else it could all be considered to be of the cheaper grade.

9. *Same; Action for Breach; Evidence; Non Compliance with Subsequent Agreement.*—In an action for a breach of contract for a sale of lumber, begun by the buyer, and on proof that through subsequent negotiations, the buyer agreed to accept a delivery of a certain amount of other lumber as a substitute for the amount then in default, it was competent for the buyer to show a non compliance on the seller's part with the subsequent agreement, since a failure to deliver the lumber showed a non compliance with what it was understood would be a compliance with the original contract.

10. *Same; Breach of Contract; Damage.*—Where the contract provided for the delivery of two grades of lumber, and there was evidence that the seller was short in delivery 324,000 feet, and that the price had advanced from $2 to $4 per M. feet, and that plaintiff's plant had been shut down for thirty days, for lack of material at a loss of $15 per day, and that there was a discrepancy in inspection from which with the other evidence, the jury would have been authorized to assess $1,500, and that there were 400,000 feet of uninspected lumber containing a large percentage of the cheaper grade which was charged for as the more expensive grade and there was also evidence from which it could be inferred that the two grades had been mixed by the direction of the seller for fraudulent purposes, a verdict for $3,500 was not excessive as damages for breach of the contract.

11. *Evidence; Opinion Evidence; Technical Terms.*—Evidence of expert lumber mill men as to the meaning of "mill cull" and "shipping cull" in the customary parlance of mill men was admissible, where it was a question as to the kind of cull delivered, since such terms are technical and not commonly known to courts and juries.

12. *Evidence; Secondary Evidence; Preliminary Proof.*—It is largely in the discretion of the trial court as to the admission of preliminary proof of acts necessarily precedent to the right to introduce secondary evidence of the contents of documents and papers.

13. *Same; Sufficiency.*—Where notice was served on defendant's counsel, and on one of defendants present at the trial, to produce an original letter written defendant, and it was not produced, though its possession is not denied, the court acted within its discretion in permitting the writer to give parol evidence as to the contents of the letter.

12. *Witnesses; Impeachment; Bad Character; Community and Neighborhood.*—Although a witness may reside in Baltimore, if he has an established business in Mobile, and spends much of his time

[Baer & Co. v. Mobile Cooperage & Box Mfg. Co.]

there, evidence as to a knowledge of his character in Mobile is admissible as a predicate for impeaching testimony; the words community and neighborhood, having no exact geographical definition, but meaning in a general way, where a witness is well known and has estalished a reputation, so that the inquiry is not confined to the domicile.

APPEAL from Mobile Circuit Court.

Heard before Hon. SAMUEL B. BROWNE.

Action by the Mobile Cooperage & Box Manufacturing Company against Richard P. Baer & Co. From a judgment for plaintiff, defendants appeal. Affirmed.

The contract, for a breach of which this suit was brought, is as follows: "This witnesseth an agreement made and entered into by and between Richard P. Baer & Co., a partnership composed of Richard P. Baer and M. F. Baer, of Baltimore, Md., and the Mobile Cooperage & Box Manufacturing Company, a corporation organized under the laws of Alabama, as follows: Said Richard P. Baer & Co., lease and rent to the said Mobile Cooperage & Box Manufacturing Company, for a term of one year, beginning from the date hereof, and ending on the 29th day of April, 1913, for a yearly rental of $500, payable in advance in quarterly installments of $125 each, the following described real estate, situated in Mobile county, Alabama, to wit: (Here follows a lengthy description of the land, together with the conditions concerning the water front and the use to which it should be put by either party.) It is further agreed that, should the said Richard P. Baer & Co., exercise the option which they have to extend their lease, which covers the above-described property, for a period of five years after the said 29th day of April, 1913, at the increased rental which is provided for in said lease, from Augustin Meaher, then the said Mobile Cooperage & Box Manufacturing Company shall have the option and right to extend this lease for said additional period of five years, by

paying its proportion of said increased rental, and by giving notice of its purpose to extend said lease as soon as notified by the said Richard P. Baer & Co., that they have exercised their option to extend their lease. In the event the said Richard P. Baer & Co., decide not to exercise their option to extend their lease for said additional period of five years, then they shall transfer such right to the said Mobile Cooperage & Box Manufacturing Company, and shall permit the said company last named to take over the entire lease for said extended period provided that it releases the said Baer & Co., from any and all liability for the rent for such extended period. The said Richard P. Baer & Co., further agree to sell to the said Mobile Cooperage & Box Manufacturing Company as much cull and mill cull hardwood lumber as the said Mobile Cooperage & Box Manufacturing Company may desire to buy from them, up to, but not exceeding 1,500,000 feet per year, at and for the price of $10 per M for shipping culls and $5 per M for mill culls, delivered either upon the railroad cars or upon the 20-foot right of way hereinbefore mentioned. In the event that it takes and purchases as many as 1,000,000 feet of said cull or mill lumber in any one year, then said Baer & Co., shall refund to it the entire $500 of rent paid for that year. (Then follows a covenant on the box factory's part not to increase the insurance of it by any extrahazardous use, etc., a reservation in the lessee of the right to remove the buildings, etc., at the expiration of the lease, and a stipulation to hold subject to the terms of the lease under which Baer & Co., held.)" The breach alleged is that during the year 1906-07, from February to February, the plaintiff exercised the right conferred by the contract to buy from the defendant the 1,500,000 feet of cull and mill cull hard lumber, the notification to Baer & Co., of such election to pay, and their

agreement to deliver said hardwood culls at the stipulat-
ed price, and that orders were given and accepted from
time to time for immediate delivery, and, although plain-
tiff was at all times willing and ready to accept and pay
for said lumber the defendant refused and wholly fail-
ed to deliver 324,000 feet, etc. The testimony was in
sharp conflict, and a sufficient statement of it is made
in the opinion of the court.

PILLANS, HANAW & PILLANS, for appellant. The con-
tract was entirely lacking in mutuality, was a nudum
pactum was void whenever defendant should decline to
deliver upon an order given.—*James v. Stiggins,* 13 Ala.
830; *Collins v. Abel,* 44 South. 109; *Collins v. Smith,* 43
South. 838; *Howard v. E. T. V. & G. R. R. Co.,* 91 Ala.
269; *Comer v. Bankhead,* 70 Ala. 136;*Whitworth v. Hart,*
22 Ala. 343; *Lewis v. Lane,* 1 Ala. 335; *Eskridge v. Glo-
ver,* 5 S. & P. 264; 117 Fed. 474; 114 Ib. 77; 105 Ib. 869;
68 Ib. 791; 43 N. Y. 240; 12 How. 136. There is no war-
ranty possible in this case.—45 N. Y. 265; 29 Ib. 358;
108 Ib. 232; 128 Ib. 593; 53 Ib. 519; 106 Ib. 90; 115 Ib.
539; 167 Ib. 48; 67 S. W. 13; 16 Ib. 81; 40 Wis. 37; 2
Benj. on Sales, sec. 935; Sec. 1267, 814, 815, 851, 871-4;
73 Am. Dec. 305. Hence, the court erred in sustaining
demurrers to the 5th and 7th pleas. When a contract
is clear and unambiguous, the question of custom vel
non becomes immaterial.—*Shelby I. Co. v. Depree,* 147
Ala. 602; *B. & A. R. R. Co. v. Maddox,* 46 South. 780;
*Byrd v. Bell,* 43 South. 751; *Kuhl v. Long,* 102 Ala. 563;
10 Wall. 383; 109 U. S. 278; 134 U. S. 306; 14 Wall.
602; 2 C. & J. star page 244. Under the contract the
law implies that the sale is for cash.—*Robbins v. Harri-
son,* 31 Ala. 160; *Adair v. Stovall,* 148 Ala. 467; 181
Mass. 134; 52 Am. Dec. 288. The court erred in refus-
ing requested charges E. and H.—*Brigham v. Carlisle,*

78 Ala. 243; *Bell v. Reynolds*, Ib. 514; *Beck v. West*, 87 Ala. 213; *Reid L. Co. v. Lewis*, 94 Ala. 628; *Moulthrop v. Hyatt*, 105 Ala. 495; *Nichols v. Rash*, 138 Ala. 377. A sufficient predicate was not laid for the introduction of secondary evidence which was introduced.—14 M. & W. 250; 43 N. W. 592; Elliott on Evidence, (vol. 2) secs. 1410, 1421 1427-8. The contract is clear and unambiguous and the court erred in the admission of evidence relative thereto.—10 Wall. 367; 17 Fed. 13; 137 U. S. 528; 50 Fed. 764. The court should not have permitted the general reputation of M. S. Bear in Mobile to be shown.—*Jackson v. The State*, 106 Ala. 17; *Holmes v. The State*, 88 Ala. 26; *Hadjo v. Gooden*, 13 Ala. 721; *Sorrell v. Craig*, 9 Ala. 534. The court should have given charge 7.—*Goldsmith v. The State*, 105 Ala. 12; *Dabney v. The State*, 113 Ala. 38; *Abrams v. The State*, 46 South. 464.

GREGORY L. & H. T. SMITH, for appellee. The contract was not void. A promise to buy will support a promise to sell, but the promise to sell may be supported by any other valuable consideration that may be given.— *Wilkes v. G. P. R. R. Co.*, 79 Ala. 180; *Moses v. McLean*, 82 Ala. 370; *Ross v. Parks*, 93 Ala. 153; *Morris v. Lagerfelt*, 103 Ala. 608; *Young v. Latham*, 132 Ala. 341; 136 Ala. 303. The lease constituted a valuable consideration.—*Christian & Craft Groc. Co. v. Bienville W. Sup. Co.*, 106 Ala. 124; *Hawralty v. Warren*, 18 N. J. E. 126; 22 A. & E. Ency of Law, 1020; 26 Ib. 30; 128 U. S. 50; 53 N. W. 249. A sale by description carries with it a warranty that the goods delivered will accord with the description by which they are sold.—*Gache v. Warren*, 72 Ala. 288; *Frith v. Holland*, 133 Ala. 586; *Brown v. Freeman*, 79 Ala. 410; *Eagan & Co. v. Johnson*, 82 Ala. 233; *Young v. Arndt Bros.*, 86 Ala. 116; 15 A. & E. Ency.

of Law, 1255; 104 N. C. 582; Benj. on Sales, secs. 1261-2. The doctrine of caveat emptor cannot be applied.—Authorities supra. The court did not err in permitting testimony relevant to the appellant's effort to deliver green hardwood lumber.—*Frith v. Holland, supra; Gache v. Warren, supra; Perry v. Johnson,* 59 Ala. 648. Whenever a technical expression is used in the contract to designate a certain classfication of articles there necessarily arises such an ambiguity as calls for parol testimoney in the construction of the contract.—*McClure v. Cox,* 32 Ala. 617; *Cannon v. Hunt,* 116 Ga. 453; *Hinote v. Brigham,* 33 South. 303. There was no error in the ruling as to the thickness of the lumber.—*Barlow v. Lambert,* 28 Ala. 709; *Kuhl v. Long, supra;* 102 Ala. 564; *Wilkerson v. Williamson,* 76 Ala. 163; *Jones v. Forth,* 36 Ala. 460. It appears from the contract and the testimony that appellants made the sale knowing that the timber was to be used in a box factory, and it follows that it warranted the timber sold to be reasonably fit for the purpose it was sold.—*McCaa v. Ealam D. Co.,* 114 Ala. 74; *Englehart v. Clanton,* 83 Ala. 336; *Perry v. Johnson, supra; Gache v. Warren, supra.* Even a delay or refusal of payment of one installment will not justify the entire rescission of the contract since it calls for deliveries by installments and payment for each delivery.—*Sims v. Ala. B. Co.,* 132 Ala. 312; *Worthington v. Gwinn,* 119 Ala. 52; *Johnson v. Allen,* 78 Ala. 300. The court did not err in admitting the evidence of custom.—*M. & E. R. R. Co. v. Cobb,* 73 Ala. 401; *E. T. V. Johnson,* 75 Ala. 604 *Haas & Bro. v. Hudmon & Bro.,* 83 Ala. 176. He who has been the instrument of loss to another should bear the same.—123 Mass. 55; Ib. 58; Ib. 60; 8 Cyc. 571; 6 A. & E. Ency of Law, 594. Counsel discuss other assignments of error, and criticise authorities cited by appellant. They insist the court properly

allowed the evidence as to the general reputation of Baer in Mobile.—*McQueen v. The State,* 108 Ala. 54; *Prater v. The State,* 107 Ala. 26.

ANDERSON, J.—While the obligation to sell the culls was binding only on the defendants, it being optional with the plaintiffs to order or not as they saw fit, and would be wanting in mutuality, if this clause was. the entire contract, or was in no way dependent upon or collateral to the lease, in which it was incorporated, they were both embodied in the same instrument, and the agreement to supply the culls was no doubt an inducement to the plaintiff to lease the property, and the obligation to pay rent therefor was a valuable consideration, not only for the use of the plant, but for the obligation on the part of the defendant to supply the culls. —*Christian & Craft Co. v. Bienville Water Co.,* 106 Ala. 124, 17 South. 352; *Merrett v. Coffin* 152 Ala. 474, 44 South. 622; *Hawralty v. Warren,* 18 N. J. Eq. 126, 90 Am. Dec. 613; 26 Am. & Eng. Ency. Law, 30.

Where goods are sold by description, and not by the buyer's selection or order, and without any opportunity for inspection (inspection before purchase), there is ordinarily an implied warranty, not only that they conform to the description in kind and specie, but also that they are "merchantable"—not that they are of the first quality, or of the second quality, but that they are not so inferior as to be unsalable among merchants or dealers in the article; i. e., that they are free from any remarkable defect. In such sales the doctrine of caveat emptor does not apply. This is especially true when the vendor is the manufacturer, or the sale is executory for future delivery.—Benj. on Sales (7th Ed.) 685, and authorities cited in note 15; *Gachet v. Warren & Burch,* 72 Ala. 288. It is also settled law that, when there is a

breach of warranty, in the sale of goods, the buyer may rescind the sale by refusing the goods, etc., or he may accept the goods and bring an action for breach of warranty, or he may recoup by way of counterclaim damages for breach of warranty in the vendor's action for the price.—*Eagan Co. v. Johnson,* 82 Ala. 233, 2 South. 302; *Frith v. Hollan,* 133 Ala. 583, 32 South. 494, 91 Am. St. Rep. 54; *Brown v. Freeman,* 79 Ala. 410. Nor does the mere fact of acceptance and use of the goods, even after knowledge of the defect, prevent a resort to an action upon a warranty or for fraud. The warranty survives the acceptance. It has been said: "The buyer need not return the goods, nor offer to do so, nor give any notice, in order to sue upon his warranty." While this rule does not obtain in England, it does in a majority of the American states, and has not only been adhered to by recent authorities in Alabama, but was followed in the early cases of *Cozzins' v. Whitaker,* 3 Stew. & P. 322, and *Milton v. Rowland,* 11 Ala. 732. As is said by Mr. Benjamin, in his valuable work on Sales (7th Ed., p. 961) : "No doubt a failure to return the goods, or notify the vendor of the defect, after sufficient opportunity to examine them, may be some evidence that no defect existed, but it is not a condition precedent to the action, nor in law a waiver of the warranty, though some states seem to hold it so, especially in executory contracts and where the defect is apparent." As an original proposition, the writer would adhere to the exception as being conducive of prompt and fair dealings between buyer and seller; but the rule has been too well established in this and other states to depart from it at this late day. The trial court did not err in sustaining the demurrer to special pleas 5 and 7.

The contract, in the case at bar, was plain and unambiguous in so far as setting out the obligation of the de-

fendants. They were to deliver not exceeding 1,500,000 feet of culls, "shipping culls at $10 per thousand and mill culls at $5 per thousand." The defendants, there-fore, complied with their contract if they delivered either shipping or mill culls which were merchantable and could be used for the purposes for which they were or-dered, as the defendants were the manufacturers and knew at the time of making the contract the use to which the plaintiffs desired to put them. It would, therefore, matter not whether they were green or dry, or thick or thin, if they were mill culls or shipping culls and were merchantable and adaptable to the uses for which they were ordered. The plaintiffs could show that they were not mill or shipping culls, were unmerchantable or unfit for the use for which they were ordered, but could not fasten, by proof of custom, a warranty not im-plied by law from the terms of the contract. The defend-ants did not undertake to deliver culls of the customary or standard size or quality, but to deliver merchantable mill and shipping culls and such that could be used in the plaintiffs' factory. The defendants did undertake however, to furnish "mill culls" and "shipping culls," and there was an implied warranty that, when they de-livered shipping culls as shipping culls, they would not deliver mill culls and collect for shipping culls. The terms "mills culls" and "shipping culls" are technical, and not commonly known to courts and juries, and there was considerable controversy as to the kind of culls de-livered, whether mill or shipping culls. It was therefore permissible for the plaintiffs to show, by expert mill men, the meaning of these terms in the customary and ordinary parlance of mill men, in order to enable the jury to classfy and differentiate mill culls from shipping culls— to determine how many of each were delivered, and whether or not any of them were unmerchantable

or unfit to be used by the plaintiff for the manufacture of boxes, etc.—*McClure v. Cox & Co.,* 32 Ala. 617, 70 Am. Dec. 552.

It may be true that, when the contract for the sale of a thing is silent as to time of payment, the law will ordinarily presume that it was for cash; yet this is not conclusive, and if the parties, by their conduct, treat it otherwise, they have the right to do so, and are bound by the mutual interpretation or construction given the matter. The plaintiffs, therefore, had the right to show that throughout their dealings with the defendants they had not been demanding or collecting the cash upon delivery, but had a fixed custom of striking balances and collecting 60 days after the respective deliveries. Moreover, the default assigned by the defendants in the letter of April 17, 1907, as a breach in failing to pay an invoice of April 11, 1907, was subsequent to the year covered by the complaint; to wit, from the 3d of February, 1906, and ending February 2, 1907. A breach made by the plaintiffs during a subsequent year would not excuse a default by the defendants for the previous year. The contract did not provide for any specified amount of mill or shipping culls, but only for an aggregate number of feet, consisting of both grades. The defendants, however, contracted to deliver mill culls at $5 per thousand, and if they fraudulently deliver them as shipping culls, and collected $10 per thousand, they breached the contract in collecting $10 for the thing they agreed to sell for $5 per thousand. It is true the evidence was not definite as to the exact number of mill culls that were passed off for shipping culls, but estimates were given, which furnished some data for the jury to assess damages; and charges E and H, requested by the defendants, were properly refused. Moreover, if the plaintiffs showed a commingling of the culls by the defendants

for a fraudulent purpose, it was incumbent on them to show the number of shipping culls, and, failing to do so the loss should fall upon them.

The only insistence of error, as to Shertzer's testimony, of what he wrote defendants, is because no predicate was established for the introduction of parol evidence. Notice was served on counsel, and one of the defendants was present at the trial, to produce the original. Its receipt or possession was not denied. Preliminary proof of the acts regarded as necessarily precedent to the right to introduce secondary evidence of the contents of papers and documents is addressed largely to the discretion of the trial court.—2 Elliott on Ev. § 1420. It is true an abuse of the discretion would be revisable; but we are not prepared to say that it was abused in the present instances.

There was no error in permitting the plaintiffs to show a noncompliance by the defendants with the subsequent agreement to deliver 200,000 feet of culls. It is true the action is on the original contract; but there was proof that through subsequent negotiations plaintiffs were willing to accept a delivery of said 200,000 feet as a substitute for the amount then in default, and a failure to deliver said 200,000 feet showed a noncompliance with what it was understood would be a compliance with the original contract.

The general rule is that, in order to impeach a witness by proof of bad character, the predicate is a knowledge of his character in the community or neighborhood in which he resides; but the term "community" or "neighborhood" is not susceptible of exact geographical definition, but means in a general way where the person is well known and has established a reputation. The inquiry is not necessarily confined to the domicile of the witness, but may extend to any community or society

in which he has a wellknown or established reputation. It is a matter of common knowledge that many men have their domicile at one point and business at another, spend much of their time at the latter, and in fact have a better established reputation there than at the place of their actual domicile.—*McQueen v. State,* 108 Ala. 54, 18 South. 843. The proof showed that, while Baer resided in Baltimore, he had an established business in Mobile, and spent much of his time there, and it was permissible for the witness to testify as to a knowledge of his character in Mobile.

The trial court did not commit reversible error in refusing charge 7 requested by the defendants.—*Morris v. McClellan*, 154 Ala. 639, 45 South. 641; *Scott v. State,* 133 Ala. 117, 32 South. 623; *Davis v. State,* 152 Ala. 25, 44 South. 561.

We are not prepared to say that the verdict of the jury was manifestly or palpably excessive, or that it was not supported by the evidence. There was proof that the defendants were short in delivery 324,000 feet, and that the price had gone up from $2 to $4 per thousand. There was also evidence that plaintiffs' plant was shut down about 40 days, 30 days of said shut-down being caused by want of material, and at a loss of $15 per day. There was a discrepancy in the inspection of Childs, which, considered with the foregoing items, supplied data from which the jury could assess over $1,500 damages; and this estimate as to the discrepancy in the inspection is upon the basis that the inspection was conclusive on the plaintiffs, when as matter of law it was but an evidential or presumptive fact of the extent of the discrepancy. There was also proof that more than 400,000 feet of uninspected culls had been delivered and charged for as shipping culls, when in fact they contained a large percentage of mill culls. (One witness said the percentage

was very large, and another said at least three-fourts of what was delivered as shipping culls were mill culls.) There was also evidence from which the jury could infer that they were so confused or mixed under the direction of the defendants and for a fraudulent purpose. We think it a sound proposition of law that, when a vendor so commingles or confuses one quality of goods with another, for a fraudulent purpose and in such a manner that they cannot be classified or separated by the jury, they will be warranted in holding all to be of the inferior grade.—6 Am. & Eng. Ency. Law, 571; 8 Cyc. 594; *Alley v. Adams,* 44 Ala. 610; *Burns v. Campbell,* 71 Ala. 288. Conceding, however, that the jury should have assessed only three-fourths of the uninspected culls, which were delivered as shipping culls, as mill culls, this would have afforded data of damage exceeding $1,500, which, added to the other items, would justify the ver' dict.

The trial court did not err in refusing the motion for a new trial, and, no reversible error having been committed during the trial, the judgment of the circuit court must be affirmed.

Affirmed.

TYSON, C. J., and DOWDELL and McCLELLAN, JJ., con-concur.