210 So.2d 701

**LIBERTY NATIONAL LIFE INSUR-
ANCE COMPANY**

**v.**

Mackie Lou **KENDRICK.**

**3 Div. 335.**

Supreme Court of Alabama.

May 2, 1968.

Rehearing Denied June 6, 1968.

Edwin C. Page, Jr., Evergreen, for appellant.

228

Wm. D. Melton, Evergreen, for appellee.

MERRILL, Justice.

Appeal from a judgment in favor of appellee for $4,000 in a suit on a life insurance policy. Appellant's motion for a new trial was overruled.

The policy provided for payment of $1,000 for natural death, $2,000 for accidental death and $4,000 for death by automobile accident. The insured was driving an automobile when it was hit by a train at Binion Pool crossing which resulted in insured's death. Appellant paid the beneficiary $2,000 but denied the extra $2,000 for death by automobile accident because of the following provision in the policy:

"DEATH BY AUTOMOBILE ACCIDENT—Death by automobile accident means death for which the accidental death benefit would otherwise by (sic) payable but which results from injuries sustained while you are riding in an automobile on a public street or highway. * * *"

Appellant has aptly stated in brief the issue of fact to be decided in these words: "The issue between the parties under the pleading is whether the Binion Pool road leading from Highway 31 to the old Binion swimming pool, and to the old Binion Camp House and on to the private camp called 'Money Sunk In' and to Murder Creek swamp was a public road or a private road. The Appellant insists it was a private road, and the Appellee that it was a public road."

Title 36, Section 1(12), Code 1940, as amended, defines "highway" as "Every way or place of whatever nature open to use of the public as a matter of right for purposes of vehicular travel. * * * The term 'highway' shall not be deemed to include a roadway or driveway upon grounds owned by private persons."

It is without dispute that no deed or formal dedication had ever been made to anyone so as to constitute the road as a public road. Most of the traffic on the road was in the summertime as people went to use the swimming pool, admission to which was secured by paying the charge. This fee was collected at the pool. There was evidence that a gate was erected near the place where the road crossed the railroad tracks and that it was sometimes locked and formerly was locked most every night. There was also testimony by the engineer who was operating the train when the insured was killed that the road was used publicly and for twenty-four years he had seen people traveling the road. Another engineer, who had been making the same run for over twenty-four years, stated that people traveled the road in both directions, that the railroad had erected a crossing sign and maintained a whistle board for the crossing as it did at other public crossings, that on his run he crossed the road about twenty-six times a month, and that it had never been closed to his knowledge. A county commissioner testified that his right to enter the road had never been contested. Many witnesses testified to the absence of "private" or "no trespassing" signs and that they used the road whenever they chose. A foreman for the County Road Department testified that he graded the road as far back as 1947 at the direction of the then county commissioner, and another road employee stated that he operated a motor patrol and had graded the road several times, the last one of which was three months prior to the date of trial. Other witnesses testified that the public used the road, that the gate had been used to keep the livestock in and not to keep the public out. One of appellant's witnesses, who had lived on some of the property as a tenant or subtenant for about six years testified that the gate was always left open and anybody who wanted to could "come down there."

In Gulf States Steel Co. v. Beveridge, 209 Ala. 473, 96 So. 587, this court said:

"It is insisted the defendant is entitled to the affirmative charge upon the theory the plaintiff had not sufficiently met the burden of proof to establish that the road which was obstructed was a public road. Plaintiff offered the proof of numerous witnesses to the effect that this road had been used by the public uninterruptedly for more than twenty years without objection, and, further, that the road had been worked and kept up by the county authorities. One Lollar, witness for the plaintiff, testified that he worked that road more than 20 years ago as one of the county 'hands,' and that the county had in fact operated and worked the road for at least 22 years."

■ It is the character rather than the quantum of use that controls in determining whether a way is public or private. Valenzuela v. Sellers, 246 Ala. 329, 20 So.2d 469; Still v. Lovelady, 218 Ala. 19, 117 So. 481.

■ The placing of stock gaps or gates to control livestock would not keep a road from becoming a public road where it was "evident that by placing the stock gaps beside the gates, there was no interruption of the use by foot or automotive vehicles." Huggins v. Turner, 258 Ala. 7, 60 So.2d 909.

We do not consider Rodgers v. Commercial Casualty Ins. Co., 237 Ala. 301, 186 So. 684, apt authority because it was a "path" case and not a road used by vehicular traffic.

■ Under the evidence and the authorities cited supra, we cannot say the trial court erred in refusing to give the requested affirmative charge for appellant, or that the verdict is opposed to the weight of the evidence as insisted by appellant.

■■■ Assignment of error eight charges that the court erred in failing to exclude the statement of counsel for plaintiff in his closing argument that "Liberty National is a very wealthy company."

The record shows the following:

"(During the course of Mr. Melton's concluding argument to the jury, the following transpired):

"MR. MELTON: * * * Liberty National is a very wealthy company; a man stole a million dollars up there a week ago.

"MR. PAGE: We object and want to exclude it from the jury.

"THE COURT: Mr. Melton, I don't think that is inferrable from the evidence in this case and I don't think it is legal argument. Mrs. Raines and gentlemen of the jury, do not consider that argument the counsel has just made in regard to the embezzlement of money by some agent or employee of Defendant; that is not evidence in this case and not proper argument."

Both of these statements were improper and should have been excluded from the consideration of the jury by proper directions of the trial court. But the exclusion was specifically limited to the embezzlement of money by an employee.

■ It is highly prejudicial to a defendant for the jury to be improperly informed as to the wealth of the defendant or the poverty of the plaintiff and thus invite the jury to be liberal with someone else's money. Southern Electric Generating Co. v. Leibacher, 269 Ala. 9, 110 So. 2d 308. Reversals were ordered in the following cases for the respective arguments of plaintiffs' counsel: Argument "relating to the financial status of defendant company," Hartford Fire Ins. Co. v. Armstrong, 219 Ala. 208, 122 So. 23; "an appeal for a large verdict upon the assumed ability of the corporate defendant to pay," American Ry. Express Co. v.

Reid, 216 Ala. 479, 113 So. 507; "Now don't go out here and bring in a small verdict against Mr. Watts just because he is a popular and wealthy man," Watts v. Espy, 211 Ala. 502, 101 So. 106; "I have a right to say what would punish me or you, perhaps, would not punish the Alabama Fuel & Iron Company," Alabama Fuel & Iron Co. v. Williams, 207 Ala. 99, 91 So. 879.

Appellee insists that we have not reversed for stronger statements such as: "Why, a $25,000 verdict against Blount Brothers would not be a slap on the leg to them," Blount Brothers Construction Company v. Rose, 274 Ala. 429, 149 So. 2d 821; "* * * if the jury brings out a verdict less than $50,000 it wouldn't be more than a mosquito bite to this defendant," "That Daniel Construction Company is saying that because this was a poor man's son that he should not recover," Daniel Construction Co. v. Pierce, 270 Ala. 522, 120 So.2d 381; "When it comes to paying out some money with these great aggregations, the life insurance companies, the richest people in this country. * *," Life & Casualty Ins. Co. v. Cain, 217 Ala. 301, 116 So. 154.

In each of the cited cases, there was an objection and this court held that the error was eradicated by the instruction of the court that it should be excluded by the jury in its consideration of the cause.

Here, there was no proper instruction for the exclusion of the statement that "Liberty National is a very wealthy company." There being no such instruction, the argument amounted to prejudicial error and for that reason the judgment of the trial court must be reversed and the cause remanded.

We cannot agree with appellant that the trial court erred in overruling the demurrer to count one of the complaint.

Appellee filed a motion to dismiss the appeal, stating ten highly technical

grounds. We consider the grounds without merit and the motion is overruled.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON and HARWOOD, JJ., concur.