262 So.2d 289

**Matthew W. POWELL**

v.

**J. C. HOPKINS and Martha W. Hopkins.**

**4 Div. 417.**

Supreme Court of Alabama.

May 11, 1972.

468

S. Fleetwood Carnley, Elba, for appellant.

Kelly & Knowles, Geneva, for appellees.

HARWOOD, Justice.

The appellees here were the complainants in the proceedings below. They filed a bill in the Circuit Court, in Equity, to quiet title to three acres of land in Geneva County, said land being described as, "All of the NW ¼ of the NE ¼ East of Pea River in Section 1, Township 1, Range 19 West." The bill avers on information and belief that the respondent Matthew W. Powell claims some right or interest in the described land; that no suit is pending to enforce or test Powell's claim, and the complainants called upon the respondent to set forth and show his claim or interest in the described land.

The bill further avers that a right-of-way easement to the three acres crossed certain described land owned by the respondent Powell, and that in the latter part of 1964, Powell erected a gate or fence across the right-of-way easement, the gate being kept locked from the time of its erection to the date of the filing of the bill, and respondent has refused to permit the complainants the use of the right-of-way easement for ingress or egress to their three acres, which they aver have been in the posses-sion of themselves or their predecessors for over thirty years. The complainants further averred that during all this time use of the right-of-way easement has been continuous, open, adverse, peaceable, etc., with full knowledge of the respondent.

The bill prayed that after hearing the court enter an order decreeing that the re-spondent has no title, right, or interest in the three acres, and that upon final hearing the court perpetually enjoin the respondent from maintaining the gate across the right-of-way easement and from interfering with complainants' right to ingress and egress to and from their property in any manner.

The respondent filed his answer to the bill in which he asserted that he and his predecessors in title have been in posses-sion of the three acres in question for over thirty years, paying taxes thereon, using the same as a pasture, and cutting and re-moving timber thereon since 1911, and re-spondent claimed the three acres by adverse possession and by prescription.

The answer further avers that the three acres have been enclosed by a fence and posted by respondent or his predecessors for more than twenty years.

The answer further denies that complain-ants or their predecessors in title have been in open, continuous, peaceable, etc., possession of the three acres for more than thirty years.

As to the gate or fence erected across the alleged right-of-way easement, the answer asserts the barrier had been there for over twenty years, having been erected by J. C. Hopkins and kept locked until subsequent to the time respondent acquired title to the three acres, and that respondent had only repaired the gate that had been there.

A hearing was held and the lower court entered a decree holding that the complain-ants were owners in fee simple of the three acres in question, and that the respondent had no right, title, or interest therein. The court further found and decreed that the complainants had an easement for a right-

of-way to the three acres across respondent's land, and that such easement had existed for over thirty years.

The respondent filed an application for a rehearing, one of the grounds of the application being that if same were not granted the respondent would be denied a right of appeal in that the court reporter had died and his notes could not be established.

The court set aside the decree theretofore entered pending another hearing on the merits.

Prior to the second hearing on the merits, the bill of complaint was amended to show that after the commencement of this suit the respondent cut and removed all merchantable timber on the three acres in question, and that said timber so cut was of the value of $600.00, and complainants prayed that the court determine the value of the timber cut and award damages to the complainants therefor.

At the second hearing on the merits a number of witnesses were presented by each side. We see no useful purpose to be served in setting out the testimony of the witnesses. Essentially a question of fact was presented to be resolved by the trier of fact.

Upon completion of the second hearing the Chancellor entered a decree the same as the first decree but with an additional provision awarding the complainants $600.-00 as damages for timber removed by the respondent from the three acres.

The respondent perfected this appeal from said decrees. For clarity, however, we will refer to the parties as complainants and respondent in this opinion.

Assignment of error 1 asserts that the court erred in decreeing that the complainants are the owners in fee simple of the three acres in question, while assignment of error 2 asserts that the court erred in decreeing that the respondent had no right, title, or interest in said three acres. These assignments may appropriately be considered together.

The record shows that the complainant, J. C. Hopkins, purchased the three acres here involved from his father and mother, H. C. and Eula Hopkins, by warranty deed dated 21 August 1934. This deed was recorded in the office of the Judge of Probate of Geneva County, Alabama, on 21 August 1934.

On 30 August 1962, the three acres were conveyed by J. C. Hopkins and his wife, Martha W. Hopkins, to themselves jointly for life, the remainder to the survivor. This warranty deed was likewise recorded in the Probate Office in Geneva County.

J. C. Hopkins has paid taxes on this land since his purchase of it in 1934.

On the other hand, none of the deeds introduced by the respondent include the three acres in the description of the land conveyed in said deeds, other than a quit claim deed from three heirs of D. W. Burkett, said quit claim deed being dated 10 December 1964, conveying a $3/12$ interest in the three acres. The significance of the quit claim deed from the Burkett heirs is that Mrs. D. W. Burkett testified, over objections of the respondent, that she and D. W. Burkett had conveyed the three acres to H. C. Hopkins in 1918. Thus, if Mrs. Burkett's testimony was properly admitted, a point raised by assignments of error 7 and 8, and considered hereinafter, the complainants, or their predecessors, have held this three acres under record title, or under color of title, at least since 1918, and for a considerably longer period under the claim of title from the predecessors in title of Burkett.

Respondent claims a right to the land by both adverse possession and prescription.

We can lay aside respondent's claim of acquisition of any right to the three acres by adverse possession in that except for the quit claim deed acquired in 1964, respondent has met none of the three alternatives necessary if he is to successfully maintain his claim of adverse possession. These alternatives are, (1) a deed or other

color of title recorded for ten years, or (2) an annual listing of the land for taxation in the proper court for ten years, or (3) title by descent cast or devise from a predecessor in title who was in possession of the land. Section 828, Title 7, Code of Alabama 1940; Lay v. Phillips, 276 Ala. 273, 161 So.2d 477.

■ But whether one claims by adverse possession or by prescription, a claimant must show dominion over the estate to the same degree under either mode of claim. Lay v. Phillips, supra.

■ To establish this dominion to the extent of divesting title out of a record title owner, proof to the required degree must show that occupancy by the claimant or his predecessors in title has been actual, clear, definite, notorious, continuous, adverse, and exclusive for the required period. Bell v. Pritchard, 273 Ala. 289, 139 So.2d 596.

The evidence presented by the respondent was to the effect that Ryals, his predecessor in title, and from whom he had purchased land bordering the three acres in 1960, had run stock through the area which included the three acres, and that he himself has done so; that the land is posted, and was posted, when he bought it; and that he and his predecessors had cut timber off the three acres.

There is not a scintilla of evidence that any of respondent's predecessors in title claimed ownership of the three acres. According to complainant's witnesses, the respondent, after acquiring the land bordering on the three acres, had placed "posted" signs along the borders of his land, but all these signs *faced the three acres in question*.

The three acres are described by various witnesses as being swamp land, undistinguishable from the surrounding land.

. [4, 5] Occasional and intermittent acts of entry upon, and cutting timber from land which is largely woodland and swamp, are insufficient to establish the trespasser's do-

minion over such land, but such acts are regarded as mere transitory trespasses without legal right, and cannot defeat the right to the land of one in actual or constructive possession under color of title. Turnipseed v. Moseley, 248 Ala. 340, 27 So. 2d 483. And where, as here, there has been no real occupancy of the land, no one having been in actual possession thereof, the possession is regarded as constructive and follows the chain of title. Bobo v. Edwards Realty Co., 250 Ala. 344, 34 So.2d 165; State ex rel., etc. v. Graham, 273 Ala. 634, 143 So.2d 810.

■ Under the evidence presented which we have read and considered with care, we are in accord with the Chancellor's conclusions and decree quieting title to the land in question in the complainants, and further decreeing that the respondent had no right, title, or interest in the land. No reversible error can be posited on assignments of error 1 and 2.

Assignments of error 3 and 4 assert error in the action of the court in decreeing that a right-of-way easement existed across the lands of the respondent which right-of-way easement would be that road which has been used for 60 years prior to the erection of a gate across the road by the respondent.

It appears from the testimony of complainants' witnesses that a way to the three acres in question went in part over land purchased by the respondent from I. D. Ryals in March 1960. This way led from Alabama Highway 52 to a landing on the Pea River. Ryals had acquired the land in 1932, though complainants' evidence tended to show that the way had been used long before Ryals had acquired the land. With the purchase of the Ryals' land by the respondent, the three acres in question became bordered on three sides by respondent's land, and on the fourth side by the Pea River.

As to the nature of this way and its use, the evidence is in hopeless conflict. The testimony presented by the respondent was

directed toward showing that the way was at best nothing more than a trail, and that Ryals had at some time during his ownership placed a gate across it.

Testimony of witnesses for the complainants gave a different picture.

J. C. Hopkins, one of the complainants, and who was some 58 years old at the time of the hearing, testified that he had known the road to the three acres all his life, and has travelled it frequently. Since moving to Florida in 1933, he has averaged going to the three acres three or four times a year. The road which led to the river was used by families living "down there" and by business people. The use of the road was unrestricted, and he never asked anyone for permission to use it. The road was open to the public, and was known generally as a public road.

Will Hopkins who as a young man had lived in the area, testified that the road had always been used by the public since 1903; that everybody from Samson went down there hunting, fishing, and picnicking.

Although he had not used the road in some 20 years, J. B. Burkett testified that the road through the Ryals' land was a public road.

J. V. Barley testified he had not missed a year in going to the three acres. He would go by the road over the Ryals' place and the road was as established as any in that area, and to his knowledge had been since 1934.

J. W. Wooten who at one time lived in the area, described the road as "a pretty good old road," with "quite a bit of traffic."

There was evidence that during his ownership of the land, Ryals at one time partly fenced it, and placed a gate, or gap, across the road, probably around 1920. He sometimes had cattle in the fenced area. The evidence seems uniform, however, that the gate and fence have long since disappeared, and when it existed the gate when closed was never locked. Those using the road would simply open it and pass along the road.

We do not attach particular significance to Ryals' gate since placing a gap or gate across a way to control livestock would not cause a road to lose its character as a public way when it was evident that by placing such obstacle there was no interruption of the way by those travelling it. Liberty National Mutual Life Ins. Co. v. Kendrick, 282 Ala. 227, 210 So.2d 701.

A public way is established in either one of three ways, (1) by a regular proceeding for that purpose, or (2) by a dedication as such by the owner of the land the way crosses, with acceptance by the proper authorities, or (3) the way is generally used by the public for twenty years. Jones v. City of Birmingham, 284 Ala. 276, 224 So.2d 632.

It is the character rather than the quantum of use that controls in determining whether a way is public or private. Liberty National Life Ins. Co. v. Kendrick, supra; Valenzuela v. Sellers, 246 Ala. 329, 20 So.2d 469.

We think there was sufficient evidence to support the court's finding and decree that the road in question had been open to those who wanted to use it for some 60 years. This was sufficient to raise a presumption of dedication of the road to public use.

Even though the road may have been infrequently used, and in bad state of repair at times, it was a public road. The burden was thus on the respondent landowner to show the use was permissive only, in support of his claimed right to the road. Ayers v. Stidham, 260 Ala. 390, 71 So.2d 95.

Under the evidence presented we hold the Chancellor was justified in concluding that the respondent did not meet this burden cast upon him.

We hold no reversible error attaches to assignments of error 3 and 4.

In order to show how the parents of J. C. Hopkins acquired the land which included the three acres in question, the complainants placed on the stand Hattie Burkett, who was born in 1892. Mrs. Burkett testified that she married D. W. Burkett in 1917, and at that time he owned forty acres of land in Geneva County, three acres of which extended across the Pea River. Over the respondent's objection, Mrs. Burkett testified that in 1918 she and her husband executed a deed to H. C. Hopkins, father of the complainant J. C. Hopkins, to the three acres of land lying across the Pea River. The consideration for the deed was a boat.

Mrs. Burkett testified that her husband had signed the deed before she did, and then called her in and said, "Arnie wanted me in there." Arnie was "the fellow who 'notorized' the deed." Arnie asked her if she was "doing it on my own free will and accord." Her stepson, Sy Burkett, had written the deed and was present when she signed it. The testimony of other witnesses tended to establish the delivery of this deed to Hopkins, and the delivery of the boat to Burkett. We treat Mrs. Burkett's statement Arnie "notorized' the deed as meaning that Arnie took the acknowledgment to the deed.

At the time Mrs. Burkett was permitted to testify as to the contents of the deed, no showing had been made as to the loss of the deed, and in this aspect the testimony was at the time inadmissible. Nevertheless, J. C. Hopkins was immediately recalled and testified that his father kept all his papers, deeds, and documents in a trunk in his home. In 1928, when he was about 14 years of age, the home and all the contents therein, was destroyed by fire except for some kitchen utensils. He had made diligent search for the Burkett deed, and had inquired of all persons who might have knowledge of its possible existence, all with negative results. This proof rendered the premature admission of Mrs. Burkett's testimony harmless.

The matter of the sufficiency of the preliminary proof as to the loss of a written contract or document permitting the relaxation of the best evidence rule, and the introduction of secondary or parol evidence as to the contents of the lost document, is largely a matter of judicial discretion. Glassell v. Mason, 32 Ala. 719; Baer & Co. v. Mobile Cooperage & Box Mfg. Co., 159 Ala. 491, 49 So. 92; Sims v. Callahan, 269 Ala. 216, 112 So.2d 776.

Under the circumstances shown, we hold that the court properly permitted Mrs. Burkett to testify as to the contents of the deed of the three acres to H. C. Hopkins. No merit attaches to respondent's assignments of error 6 and 7.

Assignment of error 5 asserts error in the action of the Chancellor in decreeing that the complainants should have and recover the sum of $600.00 for timber cut by the respondent on the three acres.

J. V. Barley testified that he was agent for the complainant J. C. Hopkins to look after his lands in Geneva County. In June 1964, he had the timber on the three acres cruised, and the man who did the cruising offered him $600.00 for the timber.

The day after the first trial of this case in 1966, he visited the three acres and observed the respondent's boys cutting the timber thereon.

Homer Grant, a timber cruiser, testified that he cruised the timber on the three acres in 1964 or 1965. Upon completion of this cruise, which showed $640.00 worth of timber, he offered $600.00 for the timber. The boundary of the three acres was marked by a line or trail, and on the trail were signs facing the three acres showing the land beyond the line to be posted by Powell.

Mr. Grant again visited the three acres with Mr. Barley early in 1971. At this time all the merchantable timber had been cut from the three acres.

The respondent testified that he himself had cut the timber some five times since 1959.

The above evidence we think amply supports that part of the Chancellor's decree awarding the complainants $600.00 as damages for the timber cut on the three acres by the respondent.

Assignment of error 8 asserts error in the action of the court in admitting four deeds relating to the chain of title of the predecessors of D. W. Burkett to the three acres in question. These are warranty deeds, duly recorded, conveying the three acres, along with other lands. The first deed to Burkett is dated 23 November 1908.

These deeds are not immaterial or irrelevant to the issues, though it would seem they are redundant as evidence in that the complainant J. C. Hopkins acquired the three acres by warranty deed from his parents in 1934, and has paid taxes thereon since. He was in constructive possession of the land from that time unless his dominion of the land was ousted by someone who had exercised continuous, adverse, notorious, etc., possession sufficient to acquire the land either by adverse possession, or by prescription. Such dominion by some other party has not been shown.

The chain of title before 1934 would therefore appear to be in the nature of an evidential overkill. The respondent, however, cannot complain of this overabundance of evidence.

This case having been heard ore tenus before the trial court who had the advantage of seeing and hearing the witnesses, the court's findings and conclusions will not be disturbed unless palpably erroneous. We find no basis that would justify our disturbing the lower court's findings and conclusions in this case. Lott et al. v. Keith, 286 Ala. 431, 241 So.2d 104.

Affirmed.

HEFLIN, C. J., and MERRILL, MADDOX, and McCALL, JJ., concur.