In March 1981 Woodward Construction Design, Inc. (Woodward), as general contractor, and Miree Painting Company, Inc. (Miree), as subcontractor, entered into a written agreement calling for Miree to provide the painting for a townhouse project owned by Athens Development Corporation (ADC). The total contract price was $39,468, to be paid by Woodward to Miree in partial payments, based on performance and subject to approval by ADC's supervising architect. The contract between the parties contained the following termination provision:
 "If the subcontractor persistently or repeatedly fails or neglects to carry out the work in accordance with the contract documents or otherwise to perform in accordance with this agreement and fails within seven days after receipt of written notice to commence and continue correction of such default or neglect with diligence and promptness, the contractor may, after seven days following receipt by the subcontractor of an additional written notice and without prejudice to any other remedy he may have, terminate the subcontract and finish the work by whatever method he may deem expedient. If the unpaid balance of the contract sum exceeds the expense of finishing the work, such excess shall be paid to the subcontractor, but if such expense exceeds such unpaid balance, *Page 391 
the subcontractor shall pay the difference to the contractor."
Miree began painting on the job in July 1988 and by November 1988 had drawn partial payments from Woodward totalling $29,468. However, due to the supervising architect's dissatisfaction with the quality of Miree's work, Woodward refused to pay Miree the final $10,000 of the contract price and instead hired another subcontractor to complete the job. Woodward claims that before hiring the second subcontractor, it provided Miree with notice pursuant to the terms of the termination provision in the contract.
Miree sued Woodward, demanding the remaining $10,000 of the contract price. Woodward, alleging that Miree had inadequately performed under the contract, counterclaimed for $14,611, the amount Woodward paid to the second subcontractor to complete the job.
An ore tenus proceeding was held in February 1990, after which the trial court entered an order finding that Miree's work was defective and that Woodward, as required by the termination provision, had given Miree two written notices before terminating the contract and hiring another subcontractor. Accordingly, the court entered a judgment against Miree and for Woodward for $4,611, the difference between the amount claimed by Miree and the amount Woodward had paid to the second subcontractor.
Miree subsequently filed a motion for new trial, alleging that the trial court's findings as to notice were in error. Miree's motion was granted, and by stipulation of the parties, the original trial transcript was resubmitted for decision by the court.
On March 26, 1992, the trial court entered a final order, wherein it again found that Woodward had provided adequate notice and again entered a judgment for Woodward and against Miree in the amount of $4,611. Miree appeals.
The dispositive issue on appeal is whether Miree received proper notice before termination of the contract.
Miree contends that Woodward did not, as required by the termination provision, provide it with two written notices at least seven days apart before waiting an additional seven days to terminate the contract and hire another subcontractor to finish the painting job. It further maintains that Woodward's failure to provide sufficient notice before putting the second subcontractor on the job prevented it from completing its work as called for by the contract. Consequently, Miree argues that the $4,611 judgment for Woodward is erroneous and that Woodward actually owes it $10,000.
In its order entered after the initial trial, the trial court found that Miree had received a first notice from Woodward on November 14, 1988, and a second notice on December 22, 1988. However, the order of the trial court following retrial of the case does not contain specific findings as to the dates Miree received notice. Where the trial court does not make specific findings of fact concerning an issue, the reviewing court will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous and against the weight and preponderance of the evidence. Thomas v. Davis, 410 So.2d 889 (Ala. 1982).
Further, because the trial court was presented with ore tenus evidence in this case, the court's judgment based on that evidence is presumed to be correct and will not be disturbed on appeal unless a consideration of the evidence and all reasonable inferences therefrom reveals that the judgment is plainly and palpably erroneous or manifestly unjust.Arzonico v. Wells, 589 So.2d 152 (Ala. 1991).
Miree asserts on appeal that it received only one written notice prior to Woodward's termination of the contract: a letter from Woodward's president, dated November 14, 1988, citing Miree for poor workmanship and asking that immediate attention be given to the problem. At trial Miree's president testified that, despite the November 14 letter, he did not learn that there was a serious question regarding his company's performance until around December 22, 1988, when Woodward's president informed him by telephone that the supervising architect had refused to approve the final payment of $10,000. *Page 392 
According to testimony, Miree's president then contacted the architect by phone and was told that he, the architect, was dissatisfied with Miree's work. Miree's president testified that he informed the architect at that time that if he found something else wrong with Miree's work, "I will be glad to get it straight."
Miree's president testified further that on January 9, 1989, he went to the job site and found painters from another company on the job. However, he stated that he did not actually receive written notice of Woodward's intent to terminate the contract until January 19, 1989, when he received a letter, postmarked January 13, 1989, from Woodward's president indicating that another subcontractor had been hired to complete the job. Enclosed with this letter was a copy of another letter, dated December 22, 1988, originally sent by the supervising architect to Woodward's president, expressing dissatisfaction with Miree's performance and recommending that Woodward hire another painting company.
Miree contends that the telephone conversations with Woodward and the supervising architect on December 22, 1988, cannot constitute a second notice. It further maintains that the letter it received from Woodward on January 19, 1989 (with the enclosure from the architect), may not be considered as a second written notice, because Woodward had already substituted another subcontractor for Miree before the letter was received. We agree.
The termination provision in the contract clearly provides that the notice contemplated must be in writing. Further, it is also clear from the language of this provision that Woodward could not terminate the contract with Miree and complete the work by some other method until seven days had elapsed from Miree's receipt of a second written notice. A court cannot refine away the terms of a contract that are expressed with sufficient clarity to convey the intent and meaning of the parties. Kinnon v. Universal Underwriters Insurance Co.,418 So.2d 887 (Ala. 1982).
Woodward contends that notwithstanding the letter of January 19, 1989, it provided Miree with at least two other written notices in addition to the letter of November 14, 1988, which were sufficient to meet the requirements of the termination provision. It directs this court's attention to a certified letter from Woodward's president to Miree's president, dated September 20, 1988, and citing Miree for serious deficiencies in its performance up to that time. Woodward also maintains that on or around November 30, 1988, Miree's president received a handwritten "punch list" ordering Miree to make certain corrections or changes in compliance with the contract. (The punch list entered into evidence actually bore the date "November 31, 1988" [sic].)
If the September 20 letter is considered to be the first written notice, Woodward maintains, then either the November 14 letter or the November 30 punch list suffices as a second written notice. If the November 14 letter is considered to be the first written notice, Woodward argues, then the November 30 punch list is a second written notice. Because it is undisputed that more than seven days elapsed after either November 14, 1988, or November 30, 1988, before Woodward hired a replacement for Miree, Woodward contends that it complied with all terms of the termination provision.
At trial Miree's president testified that he never received the letter of September 20, 1988. Accordingly, Miree asserts, this letter cannot count as notice received pursuant to the termination provision.
The rule of Alabama law is that a rebuttable presumption exists that a letter mailed, postage prepaid and properly addressed, was received in due course by the addressee.Pittman v. Gattis, 534 So.2d 293 (Ala. 1988). However, the presumption is only a rebuttable one and is not conclusive; where there is evidence that the letter was not received by the addressee, a question is presented for the trier of fact.Republic Steel Corp. v. Gilbert, 38 Ala. App. 227, 83 So.2d 370,cert. denied, 263 Ala. 700, 83 So.2d 374 (1955).
The testimony of Miree's president, that he had never received the letter, presented *Page 393 
the question of whether Miree had in fact received it. The certified letter, which was introduced into evidence at trial, was correctly addressed with the post office box number of Miree's president. However, the undisputed testimony indicated that Miree's president had neither received the letter nor declined to pick up a return receipt. The envelope containing the letter was stamped "unclaimed" and, the evidence shows, was returned unopened to Woodward's president, its sender. No evidence was presented to indicate that Woodward had attempted to resend this letter. Thus the evidence presented at trial sufficiently rebutted the presumption that Miree's president or any of his agents received the letter of September 20, 1988.
We further find that the punch list — received by Miree's president on or around November 30, 1988 — could not constitute a second written notice under the termination provision of the contract. Such punch lists are standard procedure on most construction jobs and typically detail corrections or other work (ordered by a general contractor or supervising architect) necessary to bring the job into compliance with the contract. It is not apparent from the face of the punch list, or from testimony at trial, who actually gave the list to Miree's president. It appears also that this list includes corrections and work to be performed by subcontractors other than Miree. Further, we can find no language on the list citing Miree for default or neglect in its performance or indicating that Miree should take prompt action to make corrections in order to avoid termination of the contract. A mere punch list, alone, cannot suffice as written notice under the termination provision.
In view of the foregoing, we find that the trial court had no evidence before it from which it could conclude that Miree had received a second written notice pursuant to the contract's termination provision, and we hold that the court's conclusion that such notice was given is clearly erroneous. Accordingly, the judgment for Woodward in the amount of $4,611 is due to be reversed. Further, because Woodward's actions prevented Miree from completing the work as called for by the contract, we remand the cause with instructions that the trial court enter a judgment for Miree on its claim for $10,000.
REVERSED AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and THIGPEN, J., concur.