Jerry Andrews and his wife Patricia Andrews appeal from the trial court's judgment declaring that they had not acquired a private easement by prescription across the land of James R. Hatten, a neighbor whose land is coterminous with their land.
Hatten acquired a parcel of unimproved property in 1990. Shortly after he acquired the property, he noticed tire tracks and other evidence indicating that people were traveling along two[1] unpaved roads that crossed his property. Hatten erected a cable across one of the roads to stop the traffic. (Because the roads were distinguished at trial by use of a map showing this road in green ink, we will refer to this road as "the green road.") Upon discovering that the first cable he had erected across the road had been torn down, Hatten erected another cable across the road. When he found the second cable had been torn down, Hatten placed spikes and tacks across the green road to destroy the tires on the vehicles of persons using that road. This measure effectively stopped people from crossing Hatten's land.
In 1995, the Gordons, coterminous landowners to the north of Hatten's property, arranged for a temporary right to use the green road in exchange for payment of *Page 1186 
$500. The Gordons used the road to remove timber from their property.
The Andrewses purchased their land in 1996, from the various heirs of John Stewart, who had owned the land directly adjacent to the parcel of land that is now owned by Hatten.[2] When the Andrewses purchased their land, the green road on Hatten's property was gated and locked. It is undisputed that the Andrewses never used the green road or any roads on Hatten's property and that Hatten had never permitted anyone to use either of the unpaved roads on his property without payment. Further, Hatten had effectively kept people from using the green road after he acquired the property in 1990. In September 1996, the Andrewses' attorney contacted Hatten on their behalf, seeking to acquire an easement over the property. Hatten testified that he offered the Andrewses an easement in exchange for hunting rights on their property, but stated that the Andrewses did not agree to this exchange.
In October 1998, the Andrewses sued Hatten, seeking a judgment declaring a private easement over the green road located on Hatten's property. The Andrewses waived their right to a trial by jury, and the court held a bench trial in October 1999. The court entered a judgment holding that the Andrewses were not entitled to a private easement across the road. The Andrewses appealed to the supreme court. That court transferred the appeal to this court, pursuant to § 12-2-7(6), Ala. Code 1975.
The Andrewses claim that the trial court erred in finding that they had not acquired a private easement by prescription over the green road on Hatten's property, particularly in light of the fact that the green road was the only access to a public road.
In order to establish an easement by prescription, the claimant must use the property over which the easement is claimed, for a period of 20 years or more, in a manner adverse to the owner of the property, under a claim of right, and the use must be exclusive, continuous, and uninterrupted, with the actual or presumptive knowledge of the owner.Hereford v. Gingo-Morgan Park, 551 So.2d 918 (Ala. 1989). The law presumes that the use is permissive, and the claimant has the burden of proving that the use was adverse to the owner. Bull v. Salsman, 435 So.2d 27
(Ala. 1983).
The trial court stated in its judgment that the Andrewses had not acquired an easement by prescription because they had never come into possession of the property; it is undisputed that the gate restricting entrance to the green road was present and was locked when the Andrewses purchased their property. In addition, the trial court noted in its judgment that the September 17, 1996, letter written on behalf of the Andrewses and addressed to Hatten, had sought to acquire an easement across Hatten's property. The trial court apparently interpreted this letter as an acknowledgment by the Andrewses of Hatten's superior title in the land and as a tacit admission that they were not entitled to an easement by prescription.
The Andrewses moved to set aside the judgment, or, in the alternative, for a new trial, challenging, among other things, the trial court's interpretation of the September 17, 1996, letter as an acknowledgement of Hatten's superior title. After conducting a hearing on the motion, the trial court *Page 1187 
entered an amended judgment that denied the Andrewses an easement by prescription across Hatten's property, but changed the rationale on which it was based. The amended judgment was not based on the interpretation of the September 17, 1996, letter as an acknowledgment of superior title. Further, although the court recognized that there was authority to the contrary, it ruled that the Andrewses had not acquired an easement by prescription because they had never come into possession of the subject property. In addition, the court noted that the Andrewses had not sought to have the subject road declared a public road, but stated that the evidence indicated the existence of a public road and not an easement by prescription.
Willie Pugh and J.D. Leonard, as heirs of Stewart, had conveyed their property to the Andrewses. They testified that they were 62 and 76 years old, respectively, and had lived in the community all their lives. They testified that they and all the people in their community had used the green road, for as long as they could remember, to reach to property now owned by the Andrewses, until Hatten bought his property. E.J. Chapman, a 70-year-old man who resided in the area, testified that as a boy he had used the road to ride on horseback and in wagons to reach the property now owned by the Andrewses. He also testified that he recalled that people had lived along the green road and that the public had used it for more than 20 years. Walter Lee Griffen, a 72-year-old man, testified that he had lived on the green road during his childhood, that he had walked along it to get to school, and that he had taken a wagon along the green road all the way to a place he referred to as "Blue Mountain."[3] All of these witnesses testified that they had never sought permission from anyone to use the road and that it had been commonly used by persons in the community.
Gary Butler, a consulting forester, had, in 1995, assisted the Gordons, Hatten's neighbors to the north. He testified that he had been informed that there was no easement available through the Hatten property on which to haul timber harvested from the Gordons' land. Mr. Gordon testified that he had negotiated with Hatten for the use of an easement across the green road in exchange for a payment of $500 and a written agreement to make any necessary repairs to the road after he had finished using it.
The evidence is undisputed that the green road had been used freely by the public, without anyone's seeking permission, for a period exceeding 20 years, before Hatten purchased his property in 1990. This evidence leads us to conclude that the Stewart heirs, the prior owners of the property the Andrewses now own, had acquired an easement by prescription[4] in the green road. Hatten argues that permission was implied by the conduct of his predecessors in ownership and that the burden was on the Andrewses to prove that the use of the green road was adverse to the owner of the property. We are unpersuaded by this argument. The facts of the present case are similar to those ofBelcher v. Belcher, 284 Ala. 254, 224 So.2d 613
(1969). The Belcher court noted that the evidence indicated that those claiming an easement, and their predecessors in title, had used the road in question to haul *Page 1188 
their belongings to and from their property for a period of over 20 years. That court stated:
 "We cannot agree that there was no claim of right when all of the above-mentioned activity took place on the only roadway leading to and from dwellings for over twenty years. Certain it is that the owners of appellants' land through the years had actual or presumptive knowledge of the use and that the use had been made for more than twenty years prior to the purchase of the land by appellants."
284 Ala. at 257, 224 So.2d at 615. Like the claimants in Belcher, the Andrewses have demonstrated frequent use of a road over a period of more than 20 years. As in Belcher, testimony established that people had once lived along the road and that the road was the only access to a public road. Hatten presented no evidence to refute the testimony regarding how the green road had been used before he purchased the subject property. Cf. Smith v. Gamble, 344 So.2d 749 (Ala. 1977) (the party opposing the easement presented conflicting testimony as to whether the predecessors in interest had had knowledge of any adverse use of the easement). Seealso, Stewart v. Shook Hill Road Prop. Owners' Ass'n, 726 So.2d 694
(Ala.Civ.App. 1998). The ore tenus presumption of correctness in favor of the trial court's findings does not apply when, as here, the facts are undisputed. Hereford, 551 So.2d at 920. Relying on Belcher, we conclude that the trial court erred in determining that the Andrewses had not presented sufficient evidence to prove that an easement by prescription in the green road had been created in favor of their predecessors in interest. The undisputed evidence in the record would require a finding that the Stewart heirs and their predecessors in interest, by using the green road adversely for more than 20 years, had acquired an easement by prescription over that road. The Stewart heirs conveyed that easement to the Andrewses when they conveyed their land to them. An easement by prescription passes with the conveyance of the land, even when it is not specifically mentioned in the instrument of conveyance. Fesperman v.Grier, 294 Ala. 162, 313 So.2d 525 (1975).
We now consider whether the easement by prescription acquired by the Stewart heirs was effectively abandoned after the property was conveyed by the heirs. An easement by prescription involves two distinct tenements. One tenement is dominant and is the estate to which the right belongs. The other tenement is servient and is the estate upon which the obligation rests. Wallace v. Putman, 495 So.2d 1072 (Ala. 1986). Hatten owns the servient estate and the Andrewses own the dominant estate. An easement may be terminated or abandoned if the owner of the dominant estate performs an act that renders the use of the easement impossible or treats the easement in a manner inconsistent with its further enjoyment.Byrd Companies, Inc. v. Smith, 591 So.2d 844 (Ala. 1991). Hatten, the owner of the servient estate, exhibited conduct inconsistent with the further enjoyment of the easement, but the Andrewses, the owners of the dominant estate, have exhibited no conduct giving rise to an inference of abandonment of the easement. Further, Alabama law provides that, once created, an easement by prescription will not be terminated by mere nonuse. Any period of nonuse must extend for the entire prescriptive period in order to terminate the prescriptive easement. Auerbach v.Parker, 544 So.2d 943 (Ala. 1989). Further, the burden of proving that a prescriptive easement has been abandoned rests on the party seeking to prove the abandonment. Id. It is undisputed *Page 1189 
that when Hatten acquired the property, he prevented anyone from using the green road without his permission. Butler, the forester who testified on behalf of Hatten, confirmed this fact. Hatten demonstrated that he had enforced a firm policy against use of the road, during an 8-year period while he was in possession of his land. This falls 12 years short of the prescriptive 20-year period required to prove abandonment. Moreover, we conclude that the 8-year nonuse of the green road, considered along with the locked gate and Hatten's strict policy against use of the road for that 8-year period, is insufficient to support a finding of termination of an easement that had been created by prescription. We therefore reverse the judgment denying the Andrewses' request for a declaration of a prescriptive easement and remand the case for the trial court to enter a judgment consistent with this opinion.
REVERSED AND REMANDED.
Yates, P.J., and Pittman and Murdock, JJ., concur.
Crawley, J., concurs in the result.
[1] While testimony was presented concerning two unpaved roads, it is undisputed that the Andrewses were seeking an easement only across one of the roads, a road known as "the green road."
[2] Six separate deeds of conveyances executed by the heirs of John Stewart evidence the transfer to the Andrewses of the property directly adjacent to the land owned by James Hatten.
[3] The record does not clearly indicate the exact location of "Blue Mountain."
[4] The evidence also would have supported a finding that the green road was a public road, but the Andrewses did not seek to have the green road declared a public road and did not argue that issue before the trial court or in their brief on appeal.