James R. Wilbourn sued Margaret Baker, seeking to establish a prescriptive easement across Baker's property and to enjoin Baker from obstructing that easement. Following an ore tenus proceeding, the circuit court entered a judgment for Wilbourn. Baker appeals; we reverse.
Baker owns a one-acre lot in the City of Gurley. She purchased the property in 1992 from a church association that had begun to construct a building on the site. A slab had been poured and framing had been partially completed when the framing was demolished in a storm. The church association abandoned the construction and sold the property to Baker. Baker's deed makes no mention of a right of way or easement across the property. Baker does not live on the property; she testified that she hopes one day to put a house on the existing slab. She keeps the lot mowed and visits the site "every other month or so."
Wilbourn owns a 37-acre tract to the east of Baker's property. He purchased the property in 1994 and sprigged it with Tifton Bermuda grass. He cuts the grass four times a year and sells hay to customers who come to his property to pick up the hay. On the southern boundary of the Baker and Wilbourn properties is a railroad right of way. The disputed property in this case is north of and parallel to the railroad tracks. It is a strip of land 25 feet wide and 240 feet long running from a paved road to the west of Baker's lot, across Baker's property, to Wilbourn's property. From 1994 to 2001, Wilbourn and his customers have accessed Wilbourn's fields with farm equipment and hay-hauling trucks by traveling from the paved road across the disputed strip.
Wilbourn acknowledged that there is a means of ingress to and egress from his property other than across the disputed strip. He conceded that his property joins a public road, Jenkins Street, north of the disputed strip. He claimed, however, that the portion of his property adjacent to Jenkins Street is low and swampy and not suitable for travel by the large trucks and trailers that his customers use for hauling hay. In addition, he maintained that Jenkins Street was not a feasible route for his customers because their oversize vehicles could not negotiate two narrow ninety-degree turns involved in using that road.
Wilbourn, who was 47 years old at the time of trial, testified that, since the time he was 10 years old, there has been a public road leading from the paved road to the west of what is now Baker's lot to the tract he now owns and beyond. He maintained that the road originally ran all the way to Jackson County, from Gurley to the Paint Rock Valley. Wilbourn stated that for over 30 years he had traveled the road at least once a month to go horseback riding or hunting. He also said that farmers had used the road for ingress to and egress from their fields and for bringing their cotton to the gin. Wilbourn testified that, before Baker erected a fence in 2001, there had never been a fence or gate blocking access from the paved road to the west of what is now Baker's lot to what is now his property.
Wilbourn presented the deposition testimony of Jimmy McKinney, age 69, who stated that he had lived in Gurley all his life and that he had owned the property now owned by Wilbourn for five years, from 1958 to 1963. McKinney said that the road running along the southern *Page 967 
boundary of his property was a public road known as "old highway 72" that went all the way from Gurley to Scottsboro. He testified that he and other members of the community had accessed that road by using the disputed strip. McKinney claimed that neither he nor anyone else he knew had ever asked permission of anyone to cross the strip on what is now Baker's property and none of Baker's predecessors in title had objected to the use of the strip. McKinney stated that the road had never been blocked by fences or gates. McKinney testified that "[e]verybody just used [the road] like it was a public road which it was and still is." On cross-examination, McKinney admitted that he had not seen the road since 1963, when he sold the property.
Wilbourn also presented affidavits (which were admitted without objection) of three other long-time residents of the area. The affiants averred that they were familiar with the disputed strip, that they had long considered it part of a road that had been used by the general public for many years until the construction of U.S. Highway 72 in the 1940s, and, after that, by local farmers.
Baker testified that, when she first purchased her property, there was no road, path, or right of way leading from the paved road west of her property, across her property, to what is now Wilbourn's 37-acre tract. She said there was a wood and wire gate between her land and the adjoining 37-acre tract. Baker testified that sometime in 1994 or 1995 she noticed a pile of debris burning and that, when she investigated, she saw what looked to her like remnants of the gate smoldering in the fire. Baker said that in 1994 she placed a "For Sale" sign on her lot and that she received a telephone call from Wilbourn inquiring about purchasing her property. Baker told Wilbourn that she was asking $14,000 for the property but that she would take $10,000. Wilbourn replied that her price was too high, and he would give her $5,000. Baker refused that offer.
Later, Baker said, she saw a "No Trespassing" sign on her property. She testified that she called Wilbourn and asked him if he had placed the sign there, stating that she did not want him to put anything on her property. According to Baker, Wilbourn replied that he "could put up anything he wanted" because the land where the "No Trespassing" sign was located was not her property. Wilbourn told her that the sign was located on "old highway 72."
Baker testified that, sometime before 2001, Wilbourn telephoned her again and offered to buy her property. She said that she quoted Wilbourn a price of $18,000 and that Wilbourn said the property was not worth that much. In 2001, Baker had a survey of her property performed. The survey, which was admitted into evidence, indicates that the disputed strip is Baker's property. After she had the survey done, Baker erected a chain link fence across her property to block access to the Wilbourn tract.
Walter Kelley, a representative of the Mud Creek Association, the church association that sold Baker her property, testified that the association had owned the property for five years before selling it to Baker in 1992. He said there was no road across the lot when the association had owned it. He also said that he had gone to school in Gurley in the 1940s and that there was no road across the property then.
At the close of the evidence, the parties stipulated that the disputed strip was not a part of "old U.S. Highway 72 East." Wilbourn's counsel conceded that "the State never had a Highway named 72 on the *Page 968 
north side of the railroad tracks." Instead, he explained, he had presented "evidence . . . that [the disputed strip] was sometimes referred to as `the old highway' after U.S. 72 was constructed and this highway fell into disuse as a public thoroughfare."
The trial court entered a judgment that states, in pertinent part:
 "`In order to establish an easement by prescription, the claimant must use the property over which the easement is claimed, for a period of 20 years or more, in a manner adverse to the owner of the property, under a claim of right, and the use must be exclusive, continuous, and uninterrupted, with the actual or presumptive knowledge of the owner.' Andrews v. Hatten, 794 So.2d 1184, 1186
(Ala.Civ.App. 2001).
 "The Court finds that the right of way used by [Wilbourn] had been a public thoroughfare between the towns of Gurley and Paint Rock prior to the construction of what is now known as `Old U.S. Highway 72.' After `Old U.S. Highway 72' was built in the 1930's or 1940's, the right of way continued to be used by landowners to gain access to their property and by other people to haul cotton to the gin and for other legitimate purposes. . . .
 "The Court finds that at the time [Wilbourn] purchased his 37-acre hay farm up to the present day, an easement by prescription exists across that corner of [Baker's] land that was used by [Wilbourn] and his predecessors in title as a right of way."
Baker argues that the trial court erroneously applied the law to the facts in determining that the disputed strip had become a public road by prescription. She contends that her property is unimproved and, therefore, that there is no presumption of dedication to the public by mere use for 20 years. Instead, she claims, there is a presumption that the use of the road was permissive and that Wilbourn had the burden of proving adverse use for the prescriptive period.
Citing Ford v. Alabama By-Products Corp., 392 So.2d 217 (Ala. 1980), and McInnis v. Lay, 533 So.2d 581 (Ala. 1988), Baker contends that the trial court utilized the wrong presumption and burden of proof for establishing a public road over unimproved property. In Ford, our supreme court explained the different presumptions attendant to "improved" or "reclaimed" property and to "unimproved" or "unreclaimed" property and the different burdens of proof resulting from those presumptions.[1] The court stated:
 "A public road may be established by common law dedication, statutory proceeding, or by prescription. Powell v. Hopkins, 288 Ala. 466, 262 So.2d 289
(1972). An open, defined roadway, through reclaimed land, in continuous use by the public as a highway without let or hindrance for a period of twenty years becomes a public road by prescription. When such circumstances are shown, a presumption of dedication or other appropriation to a public use arises."
Ford v. Alabama By-Products Corp., 392 So.2d at 218. In an earlier case, the supreme court explained the presumption of dedication as follows: *Page 969 
 "While it is recognized that, to constitute a dedication, the public user must be under a claim of right, the presumption referred to is held to relate to the burden of proof upon the issue of adverse user under such claim of right. So that there is a presumption that 20 years' user is an adverse user and under claim of right, when `there is nothing in the evidence to contradict the presumption.'"
Newell v. Dempsey, 219 Ala. 634, 635, 122 So. 881, 882 (1929) (quoting Locklin v. Tucker, 208 Ala. 155, 156, 93 So. 896, 897
(1922)). The Ford court continued:
 "The burden is then on the landowner to show the user was permissive only, in recognition of his title and right to reclaim the possession. Ayers v. Stidham, 260 Ala. 390, 71 So.2d 95 (1954).
 "In Benson v. Pickens County, 260 Ala. 436, 70 So.2d 647 (1954), it was noted that the above principles were not applicable to wooded or unimproved lands or lands which, though once reclaimed, had been `turned out' or left open and unused. Instead, where the road runs over unimproved or `turned out' lands there is no presumption of dedication by mere use; rather there is a presumption of permissive use and the user must establish his use as adverse to that of the owner. This principle is grounded on sound policy. Otherwise, an owner with no present use for the land over which a road runs would be required to suffer the expense of taking affirmative action to prevent travel over his unused land to avoid having a public road established on that land."
Ford v. Alabama By-Products Corp., 392 So.2d at 218-19. Seealso Thompson v. Wasdin, 655 So.2d 1058 (Ala.Civ.App. 1995).See generally Jesse P. Evans, Alabama Property Rights andRemedies § 10.4(b) at 202-03 (2d ed. 1998).
The trial court specifically found that, at the time Wilbourn purchased his 37-acre hay farm in 1994, a public thoroughfare, or a public easement by prescription, had already been established across the property now owned by Baker. The trial court, however, made no express finding whether, during the prescriptive period, Baker's property was either improved or unimproved.
"When a trial court does not make specific findings of fact concerning a particular issue, an appellate court will assume that the trial court made those findings that would have been necessary to support its judgment, unless those findings wouldbe clearly erroneous." Ex parte Byars, 794 So.2d 345, 349
(Ala. 2001) (emphasis added). Although we could assume that the trial court made a finding regarding whether Baker's property was improved or unimproved in 1994 — or in 1992, when she purchased it, or even during the years 1987 to 1992, when the church association owned the property — we cannot assume that the trial court made any finding regarding the status of Baker's property as either improved or unimproved during a 20-year prescriptive period before 1994, because the record contains no evidence to indicate the nature of Baker's property before 1987, when the church association acquired it.
In the present case, any finding as to the nature of the property now owned by Baker — that the property was improved or unimproved — before 1987 would be clearly erroneous because there was no evidence to support it. See Miree Painting Co. v.Woodward Constr. Design, Inc., 627 So.2d 389 (Ala.Civ.App. 1992) (holding that a finding that is unsupported by any evidence is clearly erroneous), reversed on another ground, 627 So.2d 393
(Ala. 1993). Compare Thompson v. Wasdin, 655 So.2d at 1060 (stating that "[t]he record clearly *Page 970 
supports the trial court's finding that the . . . property was unimproved timberland during the claimed prescriptive period").
Whether the property now owned by Baker was improved or unimproved during a 20-year prescriptive period before 1994 was the pivotal determination upon which allocation of the burden of proof depended. If the property was, as Baker argues, unimproved, then Wilbourn would have had the burden of proving that the use of the disputed strip was adverse to Baker's predecessors in title. Wilbourn's evidence was more akin to that adduced inWallace v. Putman, 495 So.2d 1072 (Ala. 1986), in which our supreme court stated the following:
 "It is common knowledge that roads in the country are frequently used as a matter of convenience without any intention on the part of the landowners to dedicate or give up the lands for public use. The evidence in this case tends to show a permissive use by the landowners. Practically all of the witnesses who testified indicated that they felt they had permission to use the roads for hunting, hiking and picking blackberries. The people who lived in this area during the time in question used each other's lands for these purposes without asking permission. . . . The Court can find no proof of a distinct claim by the people who used the road to any right adverse to the owners."
Wallace v. Putman, 495 So.2d at 1074-75. Thus, assuming the burden of proof rested with Wilbourn, without Wilbourn's having established that the use of the strip was adverse during the prescriptive period, the trial court's judgment in Wilbourn's favor was erroneous and is due to be reversed.
On the other hand, if, during a 20-year prescriptive period before 1994, the property now owned by Baker had been improved, then Baker would have had the burden of establishing that the use of the disputed strip was permissive. As we have already indicated, the evidence tended to show a permissive use of the strip during the prescriptive period. Therefore, assuming the burden of proof rested with Baker, Baker should have prevailed, and the trial court's judgment in favor of Wilbourn was erroneous and is due to be reversed.
In short, there is no ground developed in and supported by the record in this case on which we can affirm the trial court. As this court observed in Hinds v. Hinds, 887 So.2d 267
(Ala.Civ.App. 2003):
 "In Alabama Alcoholic Beverage Control Board v. City of Pelham, 855 So.2d 1070 (Ala. 2003), our Supreme Court observed that an appellate court `can affirm a trial court's judgment "if it is right on any ground developed in, and supported by, the record."' 855 So.2d at 1083 (quoting Ex parte Ramsay, 829 So.2d 146, 155 (Ala. 2002)). While this is a valid principle of law, it cannot be used to make this court into a fact-finder. The role of appellate courts is limited to deciding questions of law:
 "`. . . . The appellate courts do not sit in judgment of the facts, and review the factfinder's determination of facts only to the extent of determining whether it is sufficiently supported by the evidence, that question being one of law.'
 "Curtis White Constr. Co. v. Butts Billingsley Constr. Co., 473 So.2d 1040, 1041 (Ala. 1985) (emphasis added [in Hinds])."
Hinds, 887 So.2d at 272 n. 2.
The judgment of the circuit court is reversed.
REVERSED. *Page 971 
YATES, P.J., and PITTMAN and MURDOCK, JJ., concur.
THOMPSON, J., dissents, without writing.
[1] In Andrews v. Hatten, 794 So.2d 1184 (Ala.Civ.App. 2001), the only case cited in the trial court's judgment, no distinction was made between the different burdens of proof required for establishing a prescriptive easement over improved and unimproved property. In the second paragraph of the opinion, however, it is noted that the property at issue in that case was "unimproved." 794 So.2d at 1185.