Mark Smyth currently resides at 41 Lugo Road. Before moving to 41 Lugo Road in late 1999, Smyth lived at 115 Lugo Road; that house, which Smyth had lived in since 1985, burned down. Wade Bratcher now lives at that location, in a new house he constructed, having purchased the land from. Smyth's family members in 2005. Smyth had always used a dirt road named Lugo Road for ingress and egress to both properties. Lugo Road crosses Bratcher's property.
In October 2005, Bratcher blocked access to Lugo Road. Smyth sued Bratcher, seeking a temporary restraining order preventing Bratcher from blocking Lugo Road pending a trial, a permanent injunction preventing the road from being blocked, and damages for trespass and nuisance. The trial court granted a temporary restraining order pending a hearing; after the hearing, Bratcher was permitted to gate Lugo Road provided that he provided a key to Smyth for his use. Smyth amended his complaint, adding Barbour County as a party and alleging that Lugo Road was a public road maintained by the county.
At trial, the county stipulated that it had no records indicating that it had ever maintained Lugo Road; the county was subsequently dismissed as a party to the action. After hearing the testimony and considering the evidence presented, the trial court entered a judgment finding that Lugo Road was not a public road because Smyth's use and any use by the public had been permissive. The judgment further denied Smyth the damages he sought on his claims of trespass and nuisance. The trial court gave Smyth 60 days to establish an alternate route for ingress and egress to his property. Smyth appealed to the Alabama Supreme Court, which transferred the appeal to this court, pursuant to Ala. Code 1975, § 12-2-7(6).
Smyth argued at trial and continues to argue on appeal that Lugo Road was a public road established by prescription. He made no argument below and makes no argument on appeal relating to an establishment of an easement by prescription or by necessity over Lugo Road. He further makes no argument on appeal relating to his claims of nuisance and trespass other than to state in the conclusion of his brief that the judgment against him on those claims should be reversed, he asserts, because the judgment finding Lugo Road not to be a public road should be reversed. Thus, we will not address Smyth's trespass and nuisance claims. *Page 844 Boshell v. Keith, 418 So.2d 89, 92 (Ala. 1982) (stating that issues not raised in an appellant's initial brief are waived).
Although neither party directly discusses the fact that the burden of proof regarding the establishment of a public road differs based on whether the road travels over improved land or unimproved land, we will begin our analysis with an explanation of those differing burdens of proof.
 "[O]ur supreme court [has] explained the different presumptions attendant to `improved' or `reclaimed' property and to `unimproved' or `unreclaimed' property and the different burdens of proof resulting from those presumptions. The court stated:
 "`A public road may be established by common law dedication, statutory proceeding, or by prescription. Powell v. Hopkins, 288 Ala. 466, 262 So.2d 289 (1972). An open, defined roadway, through reclaimed land, in continuous use by the public as a highway without let or hindrance for a period of twenty years becomes a public road by prescription. When such circumstances are shown, a presumption of dedication or other appropriation to a public use arises.'
"Ford v. Alabama By-Products Corp., 392 So.2d [217,] 218 [(Ala. 1980)]. In an earlier case, the supreme court explained the presumption of dedication as follows:
 "`While it is recognized that, to constitute a dedication, the public user must be under a claim of right, the presumption referred to is held to relate to the burden of proof upon the issue of adverse user under such claim of right. So that there is a presumption that 20 years' user is an adverse user and under claim of right, when "there is nothing in the evidence to contradict the presumption."'
"Newell v. Dempsey, 219 Ala. 634, 635, 122 So. 881, 882
(1929) (quoting Locklin v. Tucker, 208 Ala. 155, 156,93 So. 896, 897 (1922)). The Ford court continued:
 "`The burden is then on the landowner to show the user was permissive only, in recognition of his title and right to reclaim the possession. Ayers v. Stidham, 260 Ala. 390, 71 So.2d 95 (1954).
 "`In Benson v. Pickens County, 260 Ala. 436, 70 So.2d 647 (1954), it was noted that the above principles were not applicable to wooded or unimproved lands or lands which, though once reclaimed, had been "turned out" or left open and unused. Instead, where the road runs over unimproved or "turned out" lands there is no presumption of dedication by mere use; rather there is a presumption of permissive use and the user must establish his use as adverse to that of the owner. This principle is grounded on sound policy. Otherwise, an owner with no present use for the land over which a road runs would be required to suffer the expense of taking affirmative action to prevent travel over his unused land to avoid having a public road established on that land.'
 "Ford v. Alabama By-Products Corp., 392 So.2d at 218-19. See also Thompson v. Wasdin, 655 So.2d 1058 (Ala.Civ.App. 1995). See generally Jesse P. Evans, Alabama Property Rights and Remedies
§ 10.4(b) at 202-03 (2d ed.1998)."
Baker v. Wilbourn, 895 So.2d 965, 968-69
(Ala.Civ.App. 2003) (footnote omitted).
Apparently, neither party was aware of the need to establish the character of the land during the prescriptive period. Based on the evidence, Lugo Road runs across the land on which Bratcher's home sits and on which Smyth's former residence sat. Thus, we conclude that the *Page 845 
land over which Lugo Road runs was, during the prescriptive period — at least during the 20 years preceding 2005 — improved land. Thus, Smyth had the burden of establishing use of Lugo Road by the public for a period of 20 years, and Bratcher would then have the burden to establish that the use was, in fact, permissive instead of adverse. Baker,895 So.2d at 968.
Smyth testified that, to his knowledge, Louis Sellers, Smyth's predecessor in title, and Sellers's friends and family, had used Lugo Road without hindrance. He admitted, however, that he did not know if anyone had requested permission to use the road. Smyth specifically mentioned a church that was located "behind" his current residence and two other houses that were formerly located along the road in 1985, indicating that Lugo Road had been used by the tenants of those homes and presumably by the church members to reach those structures. He also noted that the mail carrier delivered mail along Lugo Road to several residents in 1985 and in the years after; he said that the mail carrier had stopped delivering his mail to his home in 2001 or 2002.
Smyth also presented evidence indicating that the Cowikee Water Authority had installed a water line under Lugo Road. The general manager of the Authority, Mike Wood, testified that he had found no record of any condemnation proceeding or grant of an easement for that purpose, indicating to him, he said, that the road was a public road, because the Authority would not have needed permission to install a water line under a public road. Smyth further presented the testimony of Wheeler Ludlam, who testified that in 1928 or 1929 he rode on a school bus from his home on Lugo Road to school.
Sellers testified that he lived at 41 Lugo Road between 1967 and 1999. He testified that "the general public" used Lugo Road. He said that his friends and family had regularly used the road while he was living there and that no one had asked permission to do so. Sellers also testified that his water meter had been on Lugo Road and that the mail carrier had always driven up Lugo Road to deliver his mail.
In order to establish Lugo Road as a public road, Smyth had the initial burden of proving that the public used Lugo Road for the prescriptive period. The testimony presented established that the residents along the road used the road to go about daily business like receiving mail, having visitors, and being transported to school. The water line runs under the road, and the water meters are located at the edge of Lugo Road in front of each residence. Until 2001 or 2002, the mail carrier used the road to deliver mail to the residences on the road. At one point, a church was located on the road; the testimony does not reveal at what time the church was relocated. However, during at least part of the prescriptive period and in prior years, the church members must have used the road to reach the church. Sellers, who lived on the road from 1967 to 1999, testified that members of the general public used the road regularly and without permission.
 "[T]he law lays down no fixed rule as to the quantum of travel over the road essential to impress upon it a public use. Although the chief user be a few families having special need therefor, this does not of necessity stamp it as a private way. It is the character rather than the quantum of use that controls. It seems clear enough that the general public, including these with special interests, have continuously used the road without let or hindrance as they had occasion so to do, and such combined use has been so constant and continuous as to mark at all times a well-defined highway for vehicles *Page 846 
and pedestrians. As to public user this is sufficient."
Still v. Lovelady, 218 Ala. 19, 20, 117 So. 481, 482
(1928). In Smith v. Smith, 482 So.2d 1172 (Ala. 1985), our supreme court affirmed a trial court's determination that a particular road was a public road based on testimony from residents in the area and from the parties that the road had been in existence for many years and on the following evidence:
 "The gist of the remaining evidence is that the road for many years connected the paved public road to two houses no longer in existence. However, the road has been used by many persons, including prior owners and residents of the dwellings, as well as their tenants, friends, families, and persons doing business with them. Various crops have been grown on the land, and the road has provided access to and from the areas where they were grown. Cattle buyers and timber crews utilized the road to transport timber and cattle raised on the land. Hunters and fishermen also used the road, as did utility company personnel. The parties, their family, friends, tenants, and business invitees also used the road. Additionally, Blount County employees and others worked and maintained the road periodically."
Smith, 482 So.2d at 1174.
The evidence that supported the conclusion that the road inSmith was a public road is quite similar to the evidence Smyth presented at trial in the present case. Thus, we conclude that Smyth presented sufficient evidence to establish that Lugo Road was used adversely by the public for at least 20 years before 2005. Once Smyth met this burden, Bratcher was required to present evidence indicating that the use by the public was, in fact, permissive. Baker,895 So.2d at 969.
At trial, Bratcher focused on establishing that Smyth had an alternate route by which to access his property. Evidence of an available alternate route to Smyth's property would have been relevant if Smyth had been attempting to establish an easement by necessity over Lugo Road. See Kelly v. Panther CreekPlantation, LLC, 934 So.2d 1049, 1053-54 (Ala. 2006) ("`"[I]f one has an outlet over his own land, although less convenient he cannot claim a right of way over the premises of another."'" (quoting Roberts v. Monroe, 261 Ala. 569,575, 75 So.2d 492, 497 (1954))). However, such evidence was irrelevant to the question whether Lugo Road is a public road. Bratcher presented no evidence indicating that the use of Lugo Road by the public was permissive during the prescriptive period.
Although the trial court based its judgment determining that Lugo Road was not a public road on ore tenus evidence, and although we will disturb such a judgment on appeal only when it is demonstrated to be unsupported by the evidence, plainly erroneous, or manifestly unjust, see Auerbach v.Parker, 544 So.2d 943 (Ala. 1989), we cannot affirm the trial court's judgment in the present case. Because Smyth met his burden, establishing that Lugo Road had been regularly used by the public for at least 20 years, a presumption of dedication to public use arose. Baker, 895 So.2d at 968 (quotingFord v. Alabama By-Products Corp., 392 So.2d 217, 218
(Ala. 1980)). The burden then shifted to Bratcher, requiring that he present opposing evidence to establish that the use by the public during the prescriptive period was, in fact, permissive.Baker, 895 So.2d at 969 (quoting Ford,392 So.2d at 218). Bratcher failed to meet that burden. Accordingly, we reverse the judgment of the trial court insofar as it determined that Lugo Road was not a public road by prescription *Page 847 
and remand this cause for proceedings consistent with this opinion.
REVERSED AND REMANDED.
THOMPSON, PITTMAN, MURDOCK, and BRYAN, JJ., concur.