THOMPSON, Presiding Judge.
 

 Otis L. Johnson appeals from the judgment of the Mobile Circuit Court finding that he did not have a prescriptive easement over property adjacent to his, condemning a strip of property for his use as a means of ingress and egress to his property, and ordering him to pay compensation to the owners of the property condemned. For the reasons stated herein, we affirm that part of the judgment concluding that Johnson did not have a prescriptive easement, and we dismiss the appeal to the extent that it arises from that part of the judgment relating to the condemnation of the adjacent property.
 

 In 1994, Johnson purchased from members of his extended family a 10-acre tract of property located in the City of Satsuma (“the City”). The property does not border a public road; instead, access to the nearest public road, Baldwin Road, was obtained by use of what is variously described in the record as a trail, a dirt road, or a “pig trail” (hereinafter “the trail”). The trail began at Baldwin Road, traveled in a northwesterly direction over two tracts of property that bordered Baldwin Road, and entered Johnson’s property from the south. Running along the western border of Johnson’s property is an unimproved strip of land that connects to Baldwin Road and is owned by the City. The City has not developed the strip of land as a public roadway.
 

 In 1997, William Reeves purchased the 10-aere tract of land directly south of Johnson’s property (the second of the 2 tracts of land over which the trail traveled) and subdivided the tract into 6 100-foot-wide lots. In 2003, Metro Land Company, L.L.C. (“Metro”), purchased several of the lots from Reeves, and, in 2004, it constructed an apartment complex on the easternmost lots, thereby blocking the trail. Metro also built a road on the lots to the west of the apartment complex. The road, named Baldwin Court, runs north from Baldwin Road and terminates a few feet south of Johnson’s property in a cul-de-sac.
 

 On September 22, 2004, Johnson filed an action against the City; Metro; Gerald Prosch, one of Metro’s owners; and Charles Little, who owned the tract of land to the east of the apartments on which the trail originated at Baldwin Road. Johnson’s complaint, in separate counts, sought: (1) a declaration that he had an equitable or legal interest to a right-of-way to access Baldwin Road; (2) a finding that he owned the real property constituting the trail through adverse possession; (3) a finding that he possessed a prescriptive easement over the real property constituting the trail; and (4) a finding that he possessed an implied easement over the real property constituting the trail. Johnson also sought an order from the circuit court condemning a strip of land, pursuant to § 18-3-1, Ala.Code 1975, through property adjacent to his property over which he could gain access to Baldwin Road.
 
 [1]
 
 He also sought damages against the City on the basis that it had acted negligently when it granted Reeves’s request to subdivide Reeves’s property and when it granted Metro the right to build a structure that blocked the trail. Finally, he alleged that Metro and Prosch had committed a trespass when Metro built the apartment
 
 *964
 
 complex that blocked the trail. The City was subsequently dismissed from the action, and Johnson entered into a settlement agreement with Little, causing Little to be dismissed from the action as well.
 

 On August 3, 2007, the circuit court held a bench trial. Among others, Johnson called his cousin, Ida Howell, as a witness. Howell testified that she had lived in a house located on what is now Johnson’s property from the time of her birth until she left home when she was 19 years of age and that her parents’ house had been the only house located on that property. She testified that after leaving home she had continued to return to the property to visit her parents. She stated that the only access to the property was over the trail. She testified that her father had owned the property to the south of Johnson’s property that Reeves had subsequently purchased. She testified that her grandmother had owned property on both sides of the trail near its origin on Baldwin Road and that her grandmother and her uncle each had lived in houses on that property that were across the trail from one another. Howell stated that those three houses had been the only ones located adjacent to the trail. She testified that the only purpose the trail had served was for ingress to and egress from her relatives’ properties. Howell testified that she had ceased using the trail in 1991 because, by that time, her parents had died and her family members who had lived in houses on the trail no longer lived there.
 

 Johnson testified that he had visited his relatives on the property he now owns on many occasions when he was growing up. He testified that the trail was “just a regular road” and “wide enough to drive through.” Apparently contradicting Howell’s testimony, Johnson stated that, in addition to the house in which Howell grew up, there had been a second house on what is now his property, and that, when he purchased the property in 1994, there were two people living in that second house. Johnson ordered the two people in the second house to vacate the house, which they did, and, subsequently, he had the second house torn down and removed. The crew tearing the house down accessed his property via the trail. Johnson testified that in 1997 he had timber removed from his property and that the tracks that had removed the timber from his property had accessed his property by use of the trail. He testified that he did not ask for permission to use the trail.
 

 Defendants Metro and Prosch called Reeves, among others, as a witness. Reeves testified that when he purchased the property south of Johnson’s property in 1997, the trail was overgrown and no one was using it. He testified that, at the time that Johnson had been planning to remove the timber from his property, Johnson had told Reeves that he did not have a way to access the property and had asked Reeves for permission to use the trail. Reeves testified that he had given Johnson permission to use the trail.
 

 On February 26, 2008, the circuit court entered a judgment in which it concluded that Johnson did not have an easement by prescription over the trail and that “the testimony before the court was insufficient to establish open, hostile, visible and continuous use adverse to the landowners.” The court then determined that Johnson’s property was “landlocked with no existing, reasonably adequate means of access.” It held that Johnson was entitled, by statute, to seek the condemnation of a convenient right-of-way to Baldwin Road, and, on that basis, it granted to Johnson a 30-foot right-of-way, commencing at the intersection of Baldwin Road and Baldwin Court, traveling north over Baldwin Court and proceeding through the back of the cul-de-
 
 *965
 
 sac at the end of Baldwin Court to the southern boundary of Johnson’s property. The court ordered Johnson to pay $150,000 to Meti’o and Prosch for the land taken and for the damage caused by the condemnation of the right-of-way. The court then “dismissed” the action, concluding that there were no further issues before it. Johnson timely appealed to our supreme court, which transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975. Johnson is represented by new counsel on appeal.
 

 Johnson contends that the circuit court was without jurisdiction to act on his request to condemn Metro’s property to create a right-of-way for access to his property because, by statute, such a request must first be made in the probate court. We agree.
 

 The Alabama Constitution sets forth the basis for creating an easement over private property for access to a public road by an individual whose property is otherwise without access to a public road. Section 23 states:
 

 “That the exercise of the right of eminent domain shall never be abridged nor so construed as to prevent the legislature from taking the property and franchises of incorporated companies, and subjecting them to public use in the same manner in which the property and franchises of individuals are taken and subjected; but private property shall not be taken for, or applied to public use, unless just compensation be first made therefor; nor shall private property be taken for private use, or for the use of corporations, other than municipal, without the consent of the owner;
 
 provided, however, the legislature may by law secure to persons or corporations the right of way over the lands of other persons or corporations, and by general laws provide for and regulate the exercise by persons and corporations of the rights herein reserved;
 
 but just compensation shall, in all cases, be first made to the owner; and, provided, that the right of eminent domain shall not be so construed as to allow taxation or forced subscription for the benefit of railroads or any other kind of corporations, other than municipal, or for the benefit of any individual or association.”
 

 Ala. Const.1901, art. I, § 23 (emphasis added). The legislature provided the mechanism for condemning private property to create an access easement for landlocked property in §§ 18-3-1 and -3, Ala. Code 1975, which provide:
 

 “The owner of any tract or body of land, no part of which tract or body of land is adjacent or contiguous to any public road or highway, shall have and may acquire a convenient right-of-way, not exceeding in width 30 feet, over the lands intervening and lying between such tract or body of land and the public road nearest or most convenient thereto provided written approval is obtained from the municipal government and the planning board of such municipality.”
 

 “The right conferred by this article shall be exercised by application to the probate court of the county in which the lands over ivhich such right-of-way is desired, or a material portion thereof are situated,
 
 and the same proceedings shall be had as in cases of condemnation of lands for public uses as provided by Chapter 1 of this title.”
 

 (Emphasis added.)
 

 Our supreme court has held that a circuit court is without jurisdiction to consider, in the first instance, a request for the condemnation of property for the creation of a right-of-way for the access of land
 
 *966
 
 locked property. In
 
 Aland, v. Graham,
 
 287 Ala. 226, 250 So.2d 677 (1971), the plaintiff alleged that his property was landlocked and that he had no access from his property to a public road except through a state park. The plaintiff filed a complaint in the circuit court that sought, among other things, the condemnation of a right-of-way over the land of the state park, pursuant to the predecessor statutes to § 18-8-1 et seq., or a transfer of the cause to the probate court should the circuit court not have jurisdiction to entertain such a request. After the circuit court dismissed the action, the plaintiff appealed to the supreme court, which affirmed. As to the request for a condemnation of the property of the state park for a right-of-way, the supreme court wrote:
 

 “Demand (4) seeks, in one aspect, to have the equity court condemn a right of way under Tit. 19, § 56, Code 1940 [ (the predecessor statute to § 18-3-1) ]. This aspect is answered in the following statement in
 
 McCurdy v. Samples,
 
 262 Ala. 485, 80 So.2d 224 [ (1955) ]:
 

 “ ‘In the case at bar the complainant is in the position of having no legal right to any established right of way. Accordingly, he had no right which can at the present time be protected by injunction. A right of way must first be established under § 56, and then if the right of way is blocked, injunction could lie.
 
 In other words, we find no basis upon which the court could condemn the right of way in the equity court under the provisions of § 56, where the statutes plainly provide that such condemnation must be had in the circuit court, where an appeal is taken from the probate court.’
 
 [Emphasis supplied]
 

 “As to the second aspect of demand (4),
 
 we agree that the circuit court has no jurisdiction to entertain an original condemnation proceeding,
 
 but in view of our holding that this is a suit against the State, it would avail nothing to transfer the cause to the probate court.”
 

 Aland v. Graham,
 
 287 Ala. at 231, 250 So.2d at 681 (emphasis in final paragraph added). To like effect is our supreme court’s holding in
 
 Cotton v. May,
 
 293 Ala. 212, 215, 301 So.2d 168, 171 (1974), in which the court wrote: “Moreover, we have held that a landlocked person without a right of way for ingress and egress cannot have a way condemned in circuit court originally, but must proceed under Tit. 19, § 56, Code 1940.”
 

 Metro and Prosch argue that the circuit court did have jurisdiction to condemn Metro’s property pursuant to § 18-3-1, and, in support of this contention, they cite
 
 Montgomery v. Alabama Power Co.,
 
 250 Ala. 441, 34 So.2d 573 (1948). In
 
 Montgomery,
 
 Alabama Power Company (“APCO”), mistakenly believing that it had received permission to do so from the owner of certain property, entered that property and began to construct power lines on it. The true owners of the property filed an action in the circuit court, seeking damages against APCO for trespass. In response, APCO filed a motion to have the case transferred to the equity side of the circuit court’s docket, alleging that it had an equitable defense to the action that it could not raise on the law side of the court. The circuit court granted APCO’s motion and transferred the action to the equity court. Once in the equity court, APCO filed a petition in which it sought an order condemning a right-of-way over the property on which it had already begun constructing power lines. The court overruled the plaintiffs’ demurrer to APCO’s petition, and they appealed.
 

 On appeal, the plaintiffs argued that the relief APCO was seeking through its petition was available only in the probate
 
 *967
 
 court. Our supreme court disagreed, writing:
 

 “We think, however, that the contention overlooks a line of authority which has long been established in this state. In the case of
 
 Patterson et al. v. Atlantic Coast Line R. Co.,
 
 204 Ala. 453, 86 So. 20 [ (1920) ], in connection with a bill in equity this court, speaking through Anderson, C.J., said:
 

 “ ‘It is a well-recognized principle that in order to subject the property of another for public use under the doctrine of eminent domain, the proceedings must be as prescribed by our Constitution and statutes, yet we also have a well-established rule that, while a railroad company has no right to enter upon and take the lands of another without his consent or without condemnation proceedings and just compensation for same, if it does enter and construct its track upon the land of another, and the owner has knowledge that the company is proceeding to locate and construct its road on his land, and he allows it to spend large sums of money on improvements for such purpose, he will be estopped from ousting the company by ejectment, if the company is willing to then make just compensation, such as its taking may involve. This rule is, of course, founded upon an equitable estoppel; and while it protects the railroad from being ousted it does not estop the owner from claiming a just compensation, or relieve the railroad from the payment of same as a condition precedent of enjoining the ouster at law.’
 

 “... In
 
 Patterson et al. v. Atlantic Coast Line R. Co.,
 
 supra, the estoppel was against ousting the company by ejectment. The same principle applies when it is sought to estop the owner from prosecuting an action in trespass.”
 

 Montgomery,
 
 250 Ala. at 443-44, 34 So.2d at 574-75. The supreme court concluded that the equity court should have dismissed APCO’s petition because APCO had not alleged that the owners of the property it had taken had had knowledge of APCO’s entry onto the property and had stood by without protesting APCO’s actions.
 
 Montgomery,
 
 250 Ala. at 444, 34 So.2d at 575.
 

 The situation that our supreme court described in
 
 Montgomery
 
 is not like the case presently before us. Here, Metro and Prosch did not file suit against Johnson to seek compensation for property Johnson had wrongfully taken. That the circuit court has jurisdiction to remedy the wrongful taking of property does not mean that a circuit court has jurisdiction to entertain an original petition to condemn land for the creation of an access easement for landlocked property. As previously stated, our supreme court has determined that such jurisdiction is vested solely in the probate court.
 
 See Aland v. Graham,
 
 supra.
 

 Based on the foregoing, we conclude that the circuit court was without jurisdiction to enter that portion of its judgment condemning Metro’s and Prosch’s property for an access easement for Johnson’s property and ordering Johnson to pay $150,000 to Metro and Prosch for that easement. That portion of its final judgment is void for lack of jurisdiction, and, because a void judgment will not support an appeal, that part of the appeal predicated on that portion of the judgment must be dismissed.
 
 [2]
 

 
 *968
 
 Johnson next contends, in effect, that the circuit court erred in failing to declare that the trail had become a public road by prescription. He argues that the trail was an open, defined roadway that was in continuous use by the public for more than 20 years and that, as a result, it was a public road over which he and the general public had obtained the right to travel. We do not reach the merits of this issue, however, because Johnson failed to assert a public-dedication theory in the circuit court. Instead, in the circuit court, he pursued the theory that he possessed a private prescriptive easement over the trail, a theory he does not pursue on appeal.
 

 Although the establishment of a public road by prescription shares many of the characteristics of the establishment of a private easement by prescription, our supreme court has indicated that “[t]o establish a private easement, the prima facie sufficiency of the proof is clearly different from that necessary to establish a dedication to the public use.”
 
 Cotton v. May,
 
 293 Ala. at 215, 301 So.2d at 170. Indeed, the establishment of each requires a showing of different elements. In
 
 Andrews v. Hatten,
 
 794 So.2d 1184, 1186 (Ala.Civ.App.2001), this court indicated that, “[i]n order to establish [a private] easement by prescription, the claimant must use the property over which the easement is claimed, for a period of 20 years or more, in a manner adverse to the owner of the property, under a claim of right, and the use must be exclusive, continuous, and uninterrupted, with the actual or presumptive knowledge of the owner.” On the other hand, a public road is established by prescription when “ ‘ “[a]n open, defined roadway, through reclaimed land” ’ ” is “ ‘ “continuous[ly] use[d] by the public as a highway without let or hindrance for a period of twenty years.’””
 
 Smyth v. Bratcher,
 
 962 So.2d 842, 844 (Ala.Civ.App.2006) (quoting
 
 Baker v. Wilbourn,
 
 895 So.2d 965, 968 (Ala.Civ.App.2003), quoting in turn
 
 Ford, v. Alabama By-Products Corp.,
 
 392 So.2d 217, 218 (Ala.1980)).
 

 Because Johnson did not seek a judgment from the circuit court declaring that the trail constituted a public road, but, instead, sought the right to use the trail only under the theory that he had obtained a prescriptive easement over it, Johnson has waived the argument he makes on appeal that the circuit court erred when it failed to hold that the trail constituted a public road.
 
 See Smith v. Equifax Servs., Inc.,
 
 537 So.2d 463, 465 (Ala.1988) (“[Tjhis Court will not reverse the trial court’s judgment on a ground raised for the first time on appeal .... ”). As a result, the judgment of the circuit court is due to be affirmed as to this issue.
 

 Based on the foregoing, we dismiss that part of the appeal asserting error as to the circuit court’s judgment condemning a portion of Metro’s and Prosch’s property as a right-of-way for ingress to and egress from
 
 *969
 
 Johnson’s property and ordering Johnson to pay compensation to Metro and Prosch; we instruct the circuit court to enter an order vacating that part of its judgment and dismissing Johnson’s claim for condemnation of a right-of-way easement; and we affirm the balance of the circuit court’s judgment.
 

 APPEAL DISMISSED IN PART WITH INSTRUCTIONS; AFFIRMED IN PART.
 

 PITTMAN, BRYAN, THOMAS, and MOORE, JJ., concur.
 

 [1]
 

 . As discussed herein, § 18-3-1 et seq., Ala. Code 1975, provides the mechanism by which an individual owning property that is not adjacent to a public right-of-way can obtain an easement for ingress and egress over adjacent property connecting his or her property with a public right-of-way.
 

 [2]
 

 . We are mindful of the fact that it was Johnson who sought to have the circuit court condemn a portion of Metro’s property to create an easement by which he could access
 
 *968
 
 his property, and it is Johnson who now contends that the circuit court was without jurisdiction to have considered that request. Were the issue not one that went to the jurisdiction of the circuit court, Johnson would be barred, under several appellate principles, from raising this contention in this court.
 
 E.g., Atkins v. Lee,
 
 603 So.2d 937, 945 (Ala.1992) ("A party may not predicate an argument for reversal on 'invited error,' that is, 'error into which he has led or lulled the trial court.’ ” (quoting
 
 Dixie Highway Express, Inc. v. Southern Ry.,
 
 286 Ala. 646, 651, 244 So.2d 591, 595 (1971)));
 
 Smith v. Equifax Servs., Inc.,
 
 537 So.2d 463, 465 (Ala.1988) (''[Tjhis Court will not reverse the trial court’s judgment on a ground raised for the first time on appeal .... ”). However, the issue Johnson raises, as noted above, goes directly to the circuit court’s jurisdiction, and, as a result, it is not subject to waiver.
 
 See Ex parte Smith,
 
 438 So.2d 766, 768 (Ala.1983) ("Lack of subject matter jurisdiction may not be waived by the parties ....").